PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GRACIELA PERALES-CUMPEAN,

Petitioner,

v.

ALBERTO R. GONZALES, [*] Attorney
General,

Respondent.

---

NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD; FAMILY
VIOLENCE PREVENTION FUND;
NOW LEGAL DEFENSE AND
EDUCATION FUND,

Amici Curiae.

No. 03-9553

---

**PETITION FOR REVIEW FROM THE**
**BOARD OF IMMIGRATION APPEALS**
**(BIA No. A76-386-969)**

---

David Neslin, Arnold & Porter, LLP, Denver, Colorado (Leonor Perretta,
Utzinger & Perretta, PLLC, Salt Lake City, Utah, on the briefs) for Petitioner.

---

[*]On February 4, 2005, Alberto R. Gonzales became the United States
Attorney general. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

John C. Cunningham, Senior Litigation Counsel (Linda S. Wendtland, Assistant Director, with him on the briefs), United States Department of Justice, Washington, D.C., for Respondent.

David Neslin, Arnold & Porter, Denver, Colorado, Leslie M. Hill and Mona Luddy Benach, Arnold & Porter, Washington, D.C., Dan Kesselbrenner and Gail Pendleton, National Immigration Project of the National Lawyers Guild, Boston, Massachusetts, Leslye Orloff and Joyce Noche, NOW Legal Defense and Education Fund, Washington, D.C., filed a brief on behalf of Amici Curiae.

---

Before **HARTZ** , **ANDERSON** , and **TYMKOVICH** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

Petitioner Graciela Perales-Cumpean is a citizen of Mexico who faces removal from this country. She seeks review of the decision of the Board of Immigration Appeals (BIA) that she is not eligible for cancellation of removal under the battered spouse provisions of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(2). Respondent has filed a motion to dismiss the petition for review, contending that this court lacks jurisdiction to review the discretionary decisions that are the subject of petitioner's petition for review. We dismiss the petition for review in part for lack of jurisdiction. As to the remainder of the petition, we affirm.

## 1. Background

Petitioner concedes that she entered the United States without inspection in June 1990, making her subject to removal. On or about April 29, 1997, she married an American citizen whom she had known for about two years. She contends that after the marriage, her husband "totally changed his attitude toward her abusing her verbally and forcing her to engage in sexual relations with him against her will." Pet. Opening Br. at 6. Petitioner lived with her husband for less than three months before she left him. At the time of the IJ hearing, she was still married to her husband, but had been separated from him for over two years.

Respondent began removal proceedings against petitioner on December 8, 1997. Petitioner sought cancellation of removal under the battered spouse provisions of § 1229b(b)(2). [1] An alien seeking to qualify for cancellation of removal under this section must demonstrate that:

> (i)(I) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a United States citizen [. . .];

---

[1] The battered spouse provisions were added to the Act as part of the Violence Against Women Act of 1994 (VAWA). An alien may seek relief under the VAWA either by requesting cancellation of removal proceedings, or by filing a visa petition. *See* 8 C.F.R. §§ 204.1(a)(3), 204.2(c) (describing procedures for self-petitioning for visa). Each of these actions is independent of the other. The agency denied petitioner's VAWA visa petition administratively. *See* Admin. R. at 122-27. The decision on petitioner's VAWA self-petition is not at issue in this petition for review.

[. . .]

      (ii) the alien has been physically present in the United States for a continuous period of not less than 3 years immediately preceding the date of such application, and the issuance of a charging document for removal proceedings shall not toll the 3-year period of continuous physical presence in the United States;

      (iii) the alien has been a person of good moral character during such period, subject to the provisions of subparagraph (C);

      (iv) the alien is not inadmissible under paragraph (2) or (3) of section 1182(a) of this title, is not deportable under paragraphs (1)(G) or (2) through (4) of section 1227(a) of this title (except in a case described in section 1227(a)(7) of this title where the Attorney General exercises discretion to grant a waiver), and has not been convicted of an aggravated felony; and

      (v) the removal would result in extreme hardship to the alien, the alien's child, or the alien's parent.

8 U.S.C. § 1229b(b)(2).

The IJ denied relief, finding that petitioner had not satisfied the statutory requirement of showing that she had been subject to extreme cruelty or battery by her spouse. *See id.* § 1229b(2)(i). Specifically, the IJ determined (1) that the verbal abuse alleged by petitioner was insufficient to constitute "extreme cruelty" within the meaning of § 1229b, and (2) that petitioner had changed her story during the hearing and from previous affidavits she had filed concerning the alleged abuse and marital rape, making her testimony on these subjects not credible.

The BIA summarily affirmed the IJ's decision. Petitioner and respondent then filed a joint motion to reopen the proceedings with the BIA, noting the lack of precedent concerning the meaning of "extreme cruelty" under the battered spouse provisions and requesting the BIA to reconsider whether the case had been proper for a summary adjudication. The BIA granted the motion to reopen and again dismissed the appeal, this time with a reasoned decision. [2] The BIA stated that although the battered spouse provisions did not require petitioner to demonstrate that she suffered physical violence in order to establish "extreme cruelty," petitioner had failed to meet her burden to show that the abuse she alleged, consisting of insults, name calling, and use of derogatory language in reference to her during the short time she lived with her husband, rose to the level of extreme cruelty. The BIA further agreed with the IJ that petitioner's testimony concerning marital rape had not been credible.

Petitioner now raises three issues concerning the BIA's decision. She contends that the BIA erred in finding that the ongoing verbal abuse did not constitute "extreme cruelty" within the meaning of the VAWA. She also contends that the BIA failed to apply properly the relaxed evidentiary standards of the

---

[2]Petitioner had meanwhile filed a petition for review in this court from the BIA's initial decision. It was assigned Case No. 02-9535. She voluntarily dismissed Case No. 02-9535 on April 2, 2003, after the BIA agreed to reopen her case.

VAWA in determining that her testimony concerning marital rape was not credible. Finally, she contends that the BIA improperly required her to provide additional evidence about the incidents of marital rape on appeal despite its procedures that prevented her from doing so.

## 2. Jurisdictional Issue

As respondent points out, the threshold issue is whether we have jurisdiction to review the BIA's denial of petitioner's request for cancellation of removal. [3] The issues petitioner raises for review present two separate jurisdictional inquiries. First, do we have jurisdiction to review the BIA's determination that the non-physical abuse petitioner suffered did not rise to the level of "extreme cruelty"? Second, do we have jurisdiction to review the BIA's determination that petitioner's allegations of marital rape were not credible? We conclude that we lack jurisdiction over each of these issues. We retain jurisdiction over petitioner's third issue, a procedural claim involving her alleged

---

[3]Petitioner has moved to strike the motion to dismiss, contending that it should have been filed within fifteen days after she filed her notice of appeal, as required by 10th Cir. R. 27.2(A)(3). Even if the filing is untimely, however, we may not ignore the jurisdictional issue raised in the motion. This court has an independent obligation to determine its subject matter jurisdiction. *See, e.g., Franklin Sav. Corp. v. United States (In re Franklin Sav. Corp.)*, 385 F.3d 1279, 1286 n.6 (10th Cir. 2004), *cert. denied*, 73 U.S.L.W. 3673 (U.S. Oct. 3, 2005) (No. 04-1462).

failure to present an affidavit in support of her allegations of abuse, and on that claim, we affirm on the merits.

### a. Extreme cruelty determination

Petitioner's first issue asks "whether [her husband's] anger, jealousy, violent looks, verbal abuse, name calling, and making very derogatory remarks in front of [petitioner's] friends and neighbors [rose] to the level of extreme cruelty[.]" Pet. Opening Br. at 14. The applicable jurisdictional principle is contained in 8 U.S.C. § 1252(a)(2)(B), which states:

**(2) Matters not subject to judicial review**

. . . .

**(B) Denials of discretionary relief**

Notwithstanding any other provision of law, no court shall have jurisdiction to review –

(i) any judgment regarding the granting of relief under section . . . 1229b . . . of this title[.]

The statute does not define the meaning of "any judgment regarding the granting of relief." Our previous cases shed light on the meaning of this phrase, however. We have determined that § 1252 precludes us from reviewing decisions under § 1229b that involve the exercise of the agency's discretion. *Morales*

*Ventura v. Ashcroft*, 348 F.3d 1259, 1261-62 (10th Cir. 2003).[4]  We retain jurisdiction, however, to review the agency's non-discretionary decisions.  *Sabido Valdivia v. Gonzales*, 423 F.3d 1144, 1148-49 (10th Cir. 2005).  The determination of whether a particular decision is discretionary or non-discretionary is made on a case-by-case basis.  Decisions that involve a "judgment call" by the agency, or for which there is "no algorithm" on which review may be based, are considered discretionary and hence immune from review.  *Id.* at 1149 (quotation omitted).  Decisions for which there is a clear standard, and for which no evaluation of non-discretionary criteria is required, by contrast, may be considered non-discretionary and thus reviewable.

---

[4]We left open the possibility that some judicial review would remain available to address "'background principles of statutory construction and constitutional concerns.'"  *Morales Ventura*, 348 F.3d at 1262 (quoting *Calcano-Martinez v. INS*, 533 U.S. 348, 350 n.2 (2001)).  Congress has now superseded this language and made express what we suggested in *Morales Ventura* as part of the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310.  The Act creates a new subparagraph, 8 U.S.C. § 1252(a)(2)(D), permitting judicial review of "constitutional claims or questions of law raised upon a petition for review."  *Id.*  The new subparagraph was made applicable "to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment" of the Act.  Real ID Act § 106(b).

Concerned about the potential effect of this new statute on the jurisdictional issues in this case, the panel requested supplemental briefing from the parties on the effect, if any, of the Real ID Act on our jurisdiction to review the final order of removal at issue here.  Having reviewed the supplemental briefs filed by the parties, we are satisfied that the Real ID Act does not provide this court with jurisdiction to review the agency's determinations on the "extreme cruelty" and credibility issues.  *See, e.g., Vasile v. Gonzales*, 417 F.3d 766, 768-69 (7th Cir. 2005).

-8-

This court has not previously decided whether a determination that particular conduct rises to the level of "extreme cruelty" under § 1229b represents an exercise of the agency's discretionary judgment. Our decision in *Morales Ventura*, however, is persuasive here. In that case, we determined that the issue of whether an alien showed "exceptional and extremely unusual hardship" was discretionary because "[t]here is no algorithm for determining when a hardship is 'exceptional and extremely unusual.'" 348 F.3d at 1262. "The decision regarding when hardship has reached that level is a judgment call." *Id.* Notwithstanding petitioner's attempt to recast the BIA's decision on extreme cruelty as a pure question of law involving our de novo review, the same is true here. Determining whether a given course of conduct is "extremely cruel" involves more than simply plugging facts into a formula. The agency is required to make a judgment whether the cruel conduct alleged is sufficiently extreme to implicate the purposes of the statute. This decision involves the exercise of agency discretion.

This case, in fact, presents a prime example of why the determination of whether "extreme cruelty" has occurred is discretionary rather than non-discretionary. Congress could have chosen to define "extreme cruelty" with sufficient specificity to clarify under what circumstances verbal abuse would qualify. It could also have taken a more categorical approach to the definition of

"extreme cruelty." It did not do so. Instead, it left the specific determination to the agency.

Petitioner stresses the Congressional purpose in enacting the VAWA to offer protection to victims of abuse. We note, however, that in the same bill in which Congress created the form of relief known as cancellation of removal, and provided a special, streamlined form of that relief for battered spouses, *see* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, P.L. 104-208, § 304(a), 110 Stat. 3009-594 (codified in part at 8 U.S.C. § 1229b(b)(2)), it also specifically stripped the courts of power to review agency discretionary judgments regarding the form of relief it had just created, *see id.* § 306(a)(2), 110 Stat. 3009-607 (codified in part at 8 U.S.C. § 1252(a)(2)(B)). Had Congress intended to preserve or create judicial review of such discretionary decisions in the interest of battered spouses, it could have done so by specifically and explicitly exempting battered spouse relief from the operation of the jurisdiction-stripping provisions of IIRIRA. It did so, for example, by specifically exempting discretionary decisions on asylum applications. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (exempting from jurisdiction-stripping provision those decisions reached under 8 U.S.C. § 1158(a)). Yet Congress did not do so. In legislation generally, and in this area particularly, Congress knows how to address an issue of jurisdiction which it desires to be accorded special treatment. The omission of such special treatment

here is a significant consideration affecting our analysis of the petitioner's claims. In short, we are not disposed to create a jurisdictional exception where Congress refused to do so.

The decision whether the verbal abuse in a given case constitutes "extreme cruelty" is just the sort of non-algorithmic decision that requires a non-reviewable "judgment call" by the Attorney General. *See Morales Ventura*, 348 F.3d at 1262. There is no hard-and-fast rule to distinguish "extreme cruelty" from other, less severe, forms of cruel behavior. Such decisions are committed to agency discretion, and we cannot review them.

We recognize that the Ninth Circuit has specifically rejected this line of reasoning. *See Hernandez v. Ashcroft*, 345 F.3d 824, 833-34 (9th Cir. 2003). The Ninth Circuit has held that unlike "extreme hardship," "extreme cruelty" is a measure "that can . . . be assessed on the basis of objective standards." *Id.* at 834. While "extreme hardship" may encompass broader categories of human experience than "extreme cruelty," we disagree with the Ninth Circuit's statement that "extreme cruelty simply provides a [non-discretionary] way to evaluate whether an individual has suffered psychological abuse that constitutes domestic violence." *Id.* at 835. [5]

---

[5]We note that *Hernandez* was decided under a version of IIRIRA's transitional rules that specifically deprived the courts of the ability to review

(continued...)

-11-

We further reject petitioner's contention, that the agency regulations have channeled the BIA's exercise of discretion to such an extent that its decision on the "extreme cruelty" decision can no longer be considered discretionary. Petitioner relies on 8 C.F.R. § 204.2(c), which permits the spouse of a citizen or lawful permanent resident who has been battered or subjected to extreme cruelty to self-petition for adjustment of status. This regulation defines "battery or extreme cruelty" as follows:

(vi) Battery or extreme cruelty. For the purpose of this chapter, the phrase "was battered by or was the subject of extreme cruelty" includes, but is not limited to, being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury. Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence. Other abusive actions may also be acts of violence under certain circumstances, including acts that, in and of themselves, may not initially appear violent but that are a part of an overall pattern of violence. The qualifying abuse must have been committed by the citizen or lawful permanent resident spouse, must have been perpetrated against the self-petitioner or the self-petitioner's child, and must have taken place during the self-petitioner's marriage to the abuser.

8 C.F.R. § 204.2(c)(1)(vi).

Assuming that the Attorney General could establish an algorithm for defining "extreme cruelty" by regulatory definition, and thereby subject his determinations to judicial review under a non-discretionary, objective standard, he

[5](...continued)
certain discretionary decisions. *See Hernandez*, 345 F.3d at 833 & n.6. This case is subject to the permanent provisions of IIRIRA.

has not done so here. The definition cited above is far from algorithmic. It requires consideration of many discretionary factors. If the regulation were applied here, for example, the BIA would need to consider whether petitioner's husband's "anger, jealousy, violent looks, verbal abuse, name calling, and making very derogatory remarks in front of [petitioner's] friends and neighbors," Pet. Opening Br. at 14, qualified as "threatened act[s] of violence" that "result[ed] or threaten[ed] to result in physical or mental injury" for purposes of the regulation. While the regulation makes reference to "psychological abuse," the specific examples provided (rape, molestation, incest, and forced prostitution) all appear to be much more severe than the allegations of abuse the BIA found credible in this case. Considerable discretion also is provided by the phrases "includes, but is not limited to" and "may . . . be acts of violence under certain circumstances." In petitioner's case, at least, this regulation does not provide a binding, objective standard that would channel the BIA's discretion in a manner making it subject to judicial review.

### b. Marital rape determination

Section 1229b likewise bars us from reviewing petitioner's second issue: whether the BIA improperly neglected to apply the "any credible evidence" standard to petitioner's claim of marital rape. Marital rape clearly falls within any reasonable definition of battery. Had the agency found petitioner's

allegations on this point credible, its determination of whether the marital rape

constituted a battery for purposes of statutory eligibility would have been an

objective, non-discretionary determination subject to our review. The problem is

that the agency did not find petitioner's allegations credible. It is the

reviewability of this credibility decision itself that we must consider.

The key provision of § 1229b applicable here provides that "[i]n acting on

applications under this paragraph, the Attorney General shall consider any

credible evidence relevant to the application." 8 U.S.C. § 1229b(b)(2)(D).

Petitioner contends that this provision establishes a mandatory, objectively-

defined and non-discretionary duty to consider "any credible evidence," the

breach of which should give rise to judicial review. The statute goes on to state,

however, that "[t]he determination of what evidence is credible and the weight to

be given that evidence shall be *within the sole discretion of the Attorney*

*General*." *Id.* (emphasis added). [6] Judicial review is precluded, because we lack

---

[6]The Ninth Circuit, considering the jurisdictional impact of similar
language in a provision granting spouses subjected to battery or extreme cruelty
an exemption from the joint filing requirement for removal of the conditional
basis for permanent resident status, *see* 8 U.S.C. § 1186a(c)(4), has concluded
that such language was designed to *help* battered spouses meet their evidentiary
burden by eliminating evidentiary corroboration requirements, and therefore could
not have been intended to strip federal courts of jurisdiction over adverse
credibility determinations. *See Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1143-
47 (9th Cir. 2005). The Ninth Circuit's analysis fails to consider that Congress
could have intended to require *both* that the agency consider all credible evidence
(continued...)

jurisdiction to review any "decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii).

Petitioner contends that the IJ and the BIA failed to follow this "any credible evidence" standard in their decisions. Specifically, she argues that her testimony at the IJ hearing should not be considered inconsistent with her prior affidavits and therefore incredible merely because it included new (and more serious) allegations of marital rape, absent from the affidavits. She further contends that she was unaware of the definition of marital rape until the IJ defined it at the hearing. She asserts that evidence of marital rape cannot generally be objectively corroborated by evidence other than the victim's own testimony, and that the IJ should have provided her with further opportunity to explain her testimony at the hearing. Finally, she asserts that the IJ and the BIA should have considered the nature and impact of domestic abuse in making their credibility determinations. All of these attacks go to the agency's determination

---

[6](...continued)
in support of an alien's application, *and* that the agency's discretionary decision concerning what constitutes such credible evidence not be judicially reviewed. We note also that *Oropeza-Wong* appears to be inconsistent with prior Ninth Circuit precedent noting the entirely discretionary and hence unreviewable nature of the Attorney General's credibility determinations pursuant to § 1229b(b)(2)(D). *See Nakamoto v. Ashcroft*, 363 F.3d 874, 880 (9th Cir. 2004).

of what evidence was credible and the weight to be given to the evidence. They therefore involved a discretionary decision that we cannot review.

### c. Affidavit issue

In petitioner's final claim of error, she contends that the BIA erred by requiring her to come forward on appeal with an affidavit to explain her testimony before the IJ. In context, the BIA's statement was as follows:

> [Petitioner] did not explain her escalating testimony regarding her husband's marital rape at her hearing as counsel chose not to ask further questions. . . . Her explanation on appeal is limited to a generalized assertion that marital rape is consistent with the pattern of verbal and emotional abuse and that her failure to recognize or mention marital rape is consistent with recorded societal response. *[Petitioner] provides no detailed explanation, or affidavit*, for her testimony about repeated incidents of marital rape when she had not previously indicated in the documentary evidence that she had been raped or for the increased elaboration regarding these incidents as the hearing progress[ed].

Supp. Admin. R. at 7 (emphasis added).

Petitioner contends that since the BIA does not create its own record but relies on testimony and evidence presented to the IJ, *see* 8 C.F.R. § 1003.1(d)(3)(i), (iv); *Matter of Fedorenko*, 19 I. & N. Dec. 57, 73-74 (BIA 1984), the BIA improperly relied upon her failure to provide an affidavit explaining her testimony as grounds for affirming the IJ's adverse credibility finding. If petitioner is barred by law from presenting evidence to the BIA, then the BIA's determination that petitioner could have or should have provided such

evidence would seem to lie outside the discretionary sphere of determining "what evidence is credible and the weight to be given that evidence." 8 U.S.C. § 1229b(b)(2)(D). It appears, therefore, that we have limited jurisdiction to address this issue.

Nevertheless, we affirm. The BIA found that the record before it contained no explanation of petitioner's "escalating testimony" concerning spousal rape. Supp. Admin. R. at 7. The BIA's statement concerning an affidavit can be read as invoking the petitioner's responsibility to move for remand to the IJ for further fact-finding if she were not satisfied with the record as it stood. *See* 8 C.F.R. § 1003.1(d)(3)(iv). Petitioners routinely submit affidavits in connection with such motions to remand. *See, e.g., Ezeagwuna v. Ashcroft*, 325 F.3d 396, 403 (3d Cir. 2003). The BIA simply noted petitioner's failure to provide any explanation, by affidavit or otherwise, that would either explain the facts before it or justify a remand for further factual findings. The BIA did not err in noting the absence of evidence to justify a remand.

The petition for review is DISMISSED in part for lack of subject matter jurisdiction, and the BIA's decision is AFFIRMED in part. Petitioner's motion to strike respondent's motion to dismiss is denied.