# In the

# United States Court of Appeals

## For the Seventh Circuit

---

Nos. 04-3217 & 04-4196

JAIME MIRELES,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

---

Petitions for Review of Decisions
of the Board of Immigration Appeals

---

SUBMITTED DECEMBER 1, 2005—DECIDED JANUARY 10, 2006

---

Before EASTERBROOK, RIPPLE, and KANNE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge.* Immigration officials ordered Jaime Mireles removed to Mexico after concluding that he had arrived by stealth and has never had an entitlement to be in this country. His principal contention is that the agency failed to establish that he is not a citizen of the United States. The record contains his Mexican birth certificate plus his admission that Mexico is the only nation of which he is a citizen, but he maintains that he should not have been given an opportunity to make that admission.

The admission is recorded in a Form I-213, which recaps information that Mireles supplied in an application for adjustment of status. Had that request been granted, Mireles would have been authorized to remain in the

United States. Now he insists that, because the agency routinely denied such applications by aliens who enter without inspection unless a visa was "immediately available at the time of filing the adjustment application," 8 C.F.R. §245.2(a)(2)(i) (1995), it violated his rights under the due process clause of the fifth amendment to accept the application in the first place—for the result might be (and here, was) that it would work to his detriment without an offsetting prospect that it would yield a benefit. Moreover, Mireles asserts, the lawyer who prepared the application for adjustment of status had been suspended from practice by the time the agency made its decision.

We shall assume for the sake of argument that aliens who enter without inspection, as Mireles did, had and have slight chance of receiving any benefit by applying for adjustment of status, and that a visa was not "immediately available" for Mireles, so that his application in particular was pointless. Likewise we shall assume that Mireles's former lawyer is no longer authorized to practice immigration law. Still, how would relying on contentions that the alien freely made violate the Constitution—and why would an exclusionary rule apply to statements voluntarily submitted to the agency by anyone, whether or not licensed to practice law?

The exclusionary rule does not apply to removal proceedings. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040-50 (1984). What is more, even during a criminal investigation, where the suspect possesses rights considerably greater than those of persons in civil removal proceedings, there is no automatic bar to eliciting information, although the result is much more likely to assist the prosecutor than to assist the suspect. And except with respect to custodial interrogation, officials need not advise the suspect of his right not to speak. Mireles does not contend that the agency engaged in custodial interrogation or that any of his statements was involuntary under the constitutional standard. See, e.g.,

*Colorado v. Connelly*, 479 U.S. 157 (1986); *Miller v. Fenton*, 474 U.S. 104 (1985). There is accordingly no basis for precluding consideration of information that Mireles furnished.

That is not all. At the removal hearing, Mireles was asked his nationality. He refused to answer, maintaining that the question is "against my constitutional rights." His lawyer stated that Mireles was asserting "rights under the 1st Amendment, freedom of expression, and the 5th Amendment, due process clause." We have no idea what "rights" either Mireles or counsel could have had in mind. Witnesses lack a general right to withhold relevant evidence. To the contrary, the public has a right to every man's evidence. See *United States v. Nixon*, 418 U.S. 683 (1974). The only arguably pertinent right not to answer would be the privilege against compulsory self-incrimination, but Mireles does not contend that a truthful answer would have tended to incriminate him. Even if it had, invocation of this privilege in a removal proceeding may be the basis of an adverse inference. *Lopez-Mendoza*, 468 U.S. at 1043-44; *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923). The agency therefore was free to conclude that Mireles is not a citizen of the United States.

Immigration Judge Jennie L. Giambastiani entered the order requiring Mireles's removal. He contends that she should not have participated as an adjudicator (that, indeed, her service violated the due process clause) because, before she became an immigration judge, she had been District Counsel of the Immigration and Naturalization Service's Chicago office, which initiated these proceedings. Giambastiani's name is on the agency's response to Mireles's motion to terminate the removal proceeding, and Mireles's counsel wrote to her asking her to use prosecutorial discretion to terminate the removal proceedings. If Giambastiani were a judge under Article III, the question would be whether she "served in governmental employment

and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy". 28 U.S.C. §455(b)(3). We will never know whether she did—or whether, instead, her name appeared *pro forma* because of her job and whether counsel's request was intercepted by a subordinate— because Mireles did not submit any evidence pertinent to this subject (or seek discovery), did not ask her to recuse herself, and did not contend on appeal to the Board of Immigration Appeals that she should have done so *sua sponte*. He therefore failed to exhaust his administrative remedies, and 8 U.S.C. §1252(d)(1) prevents us from considering this issue.

What Mireles did contend before the IJ and the Board is that his removal would cause exceptional hardship to his widowed mother, a naturalized citizen of the United States who, Mireles maintains, depends on his emotional support and his (illegal) earnings. (They are illegal because he is not authorized to work in this country, and it is unlawful for anyone to employ him. 8 U.S.C. §1324a.) Neither the IJ nor the Board thought that his mother's hardship would be "exceptional and extremely unusual", the statutory standard for cancellation of removal based on hardship to an alien's immediate relative. 8 U.S.C. §1229b(b)(1). We lack jurisdiction to review his contention that the agency should have exercised discretion in his favor. Decisions under §1229b are not reviewable by the federal judiciary. 8 U.S.C. §1252(a)(2)(B)(i); *Leyva v. Ashcroft*, 380 F.3d 303 (7th Cir. 2004). This is true whether the alien's argument is that the agency abused its discretion or that it failed to conduct a thorough review of the record. See *Perales-Cumpean v. Gonzales*, 2005 U.S. App. LEXIS 25569 (10th Cir. Nov. 25, 2005).

The REAL ID Act of 2005 creates an exception for constitutional contentions and other pure issues of law. Pub. L. 109-13, 119 Stat. 231, 310, to be codified at 8 U.S.C.

§1252(a)(2)(D). Mireles does advance two arguments that meet this description. One is that the immigration judge made a legal error in understanding the meaning of "exceptional and extremely unusual hardship". This argument is mistaken; the IJ used the right legal standard. (We are not authorized to review how the IJ exercised discretion under that standard.)

The other argument Mireles founds on the Constitution. He maintains that he had a constitutional right to have the agency initiate deportation proceedings against him before April 1, 1997, when amendments to the immigration law made his legal position less favorable. Until then the remedy of "suspension of deportation" would have been available to one in his position. It has long been established, however, that there is no right to be arrested and prosecuted as soon as the government is legally able to do so. See *Hoffa v. United States*, 385 U.S. 293, 309-10 (1966). Mireles does not contend that the timing decision rested on his speech or any other constitutionally forbidden characteristic. He entered the United States covertly and did not attempt to secure permission until after being caught; he has no liberty or property interest in the timing of the proceedings to remove him. Queues often move slowly; the general public, too, might wish that these matters be handled more expeditiously, but that depends largely on the size of the agency's staff, which is outside its control.

Mireles's other contentions do not require discussion. The petitions for review are denied.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*