In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3883

ZVONKO STEPANOVIC,

*Petitioner,*

*v.*

MARK R. FILIP, Acting Attorney General
of the United States,

*Respondent.*

On Petition for Review of an Order of the
Board of Immigration Appeals.
No. A79-766-597

ARGUED OCTOBER 20, 2008—DECIDED JANUARY 28, 2009

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Zvonko Stepanovic is a citizen
of Serbia and Montenegro[1] who faces removal from the

---

[1] Following a referendum vote on May 21, 2006, Montenegro's
Parliament declared independence from Serbia on June 3, 2006.
Serbia recognized Montenegro's independence and declared
(continued...)

United States. He seeks review of an order of the Board of Immigration Appeals declaring him ineligible for cancellation of removal pursuant to the battered spouse provision of the Immigration and Nationality Act § 240A(b)(2), 8 U.S.C. § 1229b(b)(2). The government contends that this court lacks jurisdiction to review the BIA's determination that Stepanovic was not subjected to "extreme cruelty" under § 1229b(b)(2). We agree and conclude that 8 U.S.C. § 1252(a)(2) prevents us from exercising jurisdiction over the BIA's determination. Accordingly, we dismiss the petition.

## I. BACKGROUND

Stepanovic was born in a region of the former Republic of Yugoslavia that is now in Serbia. In 1993, he married Silvana Simic, and the two moved to South Africa. The couple had one child, Kristina, before obtaining an amicable divorce in 1996. Silvana and Kristina remained in South Africa until 1997, and they now live in Florida.

On September 30, 1997, the United States admitted Stepanovic as a non-immigrant visitor with authorization to remain for a period not to exceed six months. He be-

---

[1] (...continued)
an end to the union of the two states. On June 28, 2006, Montenegro became a member state of the United Nations. These events occurred after the immigration judge's order in the proceedings below, although they do not affect our analysis in this appeal.

came a self-employed cross-country truck driver and lived in Chicago. In 1998, Stepanovic met Sonja Jovanovic, a U.S. citizen working in a Serbian restaurant, and the two began dating.

Stepanovic remained in the United States past the authorized six-month time period, and in 2002, immigration authorities detained him in Spokane, Washington. On May 8, 2002, the Immigration and Naturalization Service[2] sought to remove him for being in the United States illegally, pursuant to 8 U.S.C. § 1227(a)(1)(B)-(C)(I). Stepanovic returned to Chicago after being released on a bond.

Approximately one month later, Stepanovic married Jovanovic and moved into her Chicago apartment. At a hearing before an immigration judge in January 2003, Stepanovic conceded removability, but at a later hearing in July, he stated that he would seek relief from removal because of his marriage to a United States citizen.

In November 2003, Stepanovic returned from a long-distance trucking trip, expecting Jovanovic to pick him up where he typically parked. She failed to appear, and he spent the night in his truck. Stepanovic received a ride home from a friend the next day, only to find that Jovanovic had locked him out of the apartment. When she finally answered the door, she appeared angry and would not let him enter. She handed him two bags of

---

[2] On March 1, 2003, the INS ceased to exist as an independent agency, and the Department of Homeland Security assumed its functions.

clothes and told him to leave, threatening to call the police if he did not. Jovanovic never allowed Stepanovic back into the apartment, and the two eventually divorced.

At a hearing in October 2004, Stepanovic informed the IJ that he and Jovanovic had separated and that he now intended to petition for cancellation of removal. On December 5, 2005, the IJ held a hearing on the merits of Stepanovic's application for cancellation of removal for battered spouses who have been subjected to "extreme cruelty," pursuant to 8 U.S.C. § 1229b(b)(2). In addition to the aforementioned facts, Stepanovic presented evidence that Jovanovic became involved with another man during their marriage and may have been unfaithful. Stepanovic stated that he heard from friends that Jovanovic later married this same man.

Stepanovic conceded that he was never battered or subjected to physical harm, but he claimed that he suffered mental and emotional distress as a result of these events, the deterioration of his marriage, Jovanovic's continued refusal to return his phone calls, and occasionally seeing her in public with another man. At the conclusion of the hearing, the IJ denied Stepanovic's application because he failed to meet his burden of proof for cancellation of removal, including that he did not establish that his ex-wife subjected him to "extreme cruelty."[3] The IJ granted Stepanovic's alternative request for voluntary departure

---

[3] The IJ also found that Stepanovic failed to demonstrate a viable marriage and that Stepanovic's daughter was not a qualifying relative under the statute, 8 U.S.C. § 1229b(b)(2), because she was not a lawful permanent resident.

and designated South Africa as the country of removal. Stepanovic appealed the IJ's decision to the BIA.

On October 31, 2007, the BIA dismissed his appeal. The BIA agreed with the IJ that Stepanovic failed to demonstrate that he was subjected to extreme cruelty by his spouse under § 1229b(b)(2). The BIA held that "[i]n light of this determination, we need not reach the other arguments raised on appeal regarding the other eligibility criteria for cancellation of removal."

## II. ANALYSIS

Stepanovic appeals the BIA's decision that he failed to prove that he was subjected to extreme cruelty. Because the BIA undertook an independent review of the record and did not rely exclusively on the IJ's findings, we review the BIA's decision directly and not that of the IJ. *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 843 (7th Cir. 2007). Stepanovic also claims that the BIA incorrectly altered the legal standard for establishing extreme cruelty by requiring psychiatric or medical evidence that his emotional suffering rose to the level of extreme cruelty.

### A. Battered Spouse Provision of the INA

Under the INA's battered spouse provision, the "Attorney General may cancel removal" of an alien who is otherwise removable if the petitioner establishes the elements of 8 U.S.C. § 1229b(b)(2), including that he "has been battered or subjected to extreme cruelty by a spouse

or parent who is or was a United States citizen." *Id.* § 1229b(b)(2)(A)(i)(I).[4]

Congress has not defined "extreme cruelty" or provided a legal standard for determining its existence for the purposes of § 1229b(b)(2). However, the DHS promulgated a regulation that permits a battered spouse of a citizen or lawful permanent resident to self-petition for adjustment of status, and it defines "battery or extreme cruelty" as including, but not limited to:

> being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury. Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence. Other abusive actions may also be acts of violence under certain circumstances, including acts that, in and of themselves, may not initially appear violent but that are a part of an overall pattern of violence.

8 C.F.R. § 204.2(c)(1)(vi).

---

[4] An applicant for cancellation of removal under § 1229b(b)(2) also must demonstrate (1) physical presence for a continuous period of not less than three years immediately preceding the application; (2) good moral character during such period; (3) that he or she is not inadmissible or deportable under other provisions and has not been convicted of an aggravated felony; and (4) that removal would result in extreme hardship to the alien, his child, or his parent. 8 U.S.C. § 1229b(b)(2)(A)(ii)-(v).

Based on the statute and the DHS regulation, Stepanovic asserts that his ex-wife's conduct and the deterioration of their marriage resulted in emotional and mental injury and constituted extreme cruelty under § 1229b(b)(2).

### B.  Jurisdiction Under 8 U.S.C. § 1252(a)(2)

Before reaching the merits of Stepanovic's claims, we must have jurisdiction to review the BIA's determination that Stepanovic failed to demonstrate extreme cruelty. Congress has delegated many immigration decisions to the Attorney General, and in so doing has expressly circumscribed our jurisdiction to review certain judgments. *See* 8 U.S.C. § 1252(a)(2); *Khan v. Mukasey*, 517 F.3d 513, 517 (7th Cir. 2008). The applicable jurisdictional provision, entitled "Denials of discretionary relief," provides:

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section . . . 1229b . . . of this title . . . .

8 U.S.C. § 1252(a)(2)(B).

Stepanovic seeks relief under § 1229b, so we must turn to the exception to the jurisdiction-removal provision, found in subparagraph (D), which states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be

construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). Thus, reading the two provisions together, we may not review the BIA's decision to deny an alien's application for cancellation of removal under § 1229b unless the alien presents a constitutional claim or question of law.

Stepanovic makes two separate arguments. First, he asserts that the BIA's determination of extreme cruelty is non-discretionary, and is therefore a reviewable decision outside the scope of § 1252(a)(2)(B). Second, he argues that the BIA altered the legal standard for establishing extreme cruelty, which he states should constitute a reviewable question of law. We address each argument and find both unpersuasive.

1.  *Discretionary Nature of the Extreme Cruelty Determination*

Stepanovic first urges us to find that the extreme cruelty determination is non-discretionary and therefore within our jurisdiction to review. The government disagrees, arguing that the determination is discretionary and not reviewable.

Congress did not define the phrase "any judgment regarding the granting of relief" for the purposes of § 1252(a)(2)(B)(i). The statute is clear that, at a minimum, we may not review any discretionary determination regarding relief under § 1229b. *See, e.g., Martinez-Maldonado*

*v. Gonzales*, 437 F.3d 679, 682 (7th Cir. 2006) ("[Section 1252(a)(2)(B)] bars judicial review of all discretionary decisions of the Attorney General made in immigration cases, with a few exceptions . . . ."); *Cevilla v. Gonzales*, 446 F.3d 658, 661 (7th Cir. 2006) ("[W]hile the purpose of the door-closing statute appears to be to place *discretionary* rulings beyond the power of judicial review (hence the caption of subsection (B)), the statute itself, read literally, goes further and places all rulings other than those resolving questions of law or constitutional issues beyond the power of judicial review." (emphasis added)).

Subsection (D) of the jurisdictional statute restores our jurisdiction to review only constitutional claims or questions of law. *See* 8 U.S.C. § 1252(a)(2)(D). We have interpreted the phrase "questions of law" to permit judicial review of only "pure"questions of law. *See Viracacha v. Mukasey*, 518 F.3d 511, 515 (7th Cir. 2008); *Cevilla*, 446 F.3d at 661 (explaining that Congress intended "to distinguish between 'statutory-construction questions' and 'factual questions' and to permit judicial review only of answers to the former"). A "pure" question of law arises in "situations in which a case comes out one way if the Constitution or statute means one thing, and the other way if it means something different." *Viracacha*, 518 F.3d at 515. Therefore, factual or discretionary determinations do not constitute reviewable questions of law under § 1252(a)(2)(D). *See Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007); *Cevilla*, 446 F.3d at 661.

This court has not previously addressed our jurisdiction to review an IJ's extreme cruelty determination for the

purposes of § 1229b(b)(2). We have, however, held repeat-edly that an analogous issue is *not* subject to judicial review: whether an alien will suffer "exceptional and extremely unusual hardship" in order to obtain cancella-tion of removal under § 1229b(b)(1). *See Martinez-Maldonado*, 437 F.3d at 682 ("Our Court and others have confirmed that the application of [§ 1252(a)(2)(B)] strips us of jurisdiction in discretionary cancellation of removal cases."); *Mireles v. Gonzales*, 433 F.3d 965, 968 (7th Cir. 2006) ("We lack jurisdiction to review [petitioner's] con-tention that the agency should have exercised discretion in his favor [under § 1229b]. . . . This is true whether the alien's argument is that the agency abused its discretion or that it failed to conduct a thorough review of the record." (citations omitted)); *Leyva v. Ashcroft*, 380 F.3d 303, 307 (7th Cir. 2004) ("The meaning of 8 U.S.C. § 1252(a)(2)(B)(i) is clear: we may not review the Attorney General's judgment regarding whether or not to grant cancellation of removal under 8 U.S.C. § 1229b(b)(1)."); *Kharkhan v. Ashcroft*, 336 F.3d 601, 604 (7th Cir. 2003).[5]

Stepanovic has not presented a convincing reason why the extreme cruelty determination under § 1229b(b)(2) should be treated differently than "exceptional and extremely unusual" hardship under § 1229b(b)(1). Both

---

[5] *Leyva* and *Kharkhan* were both decided before § 1252(a)(2)(D) became effective in May 2005, as part of the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310. The addition of § 1252(a)(2)(D), however, did not affect our holding that the BIA's determination of "exceptional and extremely unusual hardship" is not subject to judicial review according to § 1252(a)(2)(B). *See Mireles*, 433 F.3d at 968-69.

are subject to the jurisdiction-removal provision in § 1252(a)(2)(B), and Stepanovic is challenging the BIA's factual findings, its application of those facts to the law, and its exercise of discretion in denying relief under § 1229b(b)(2). We lack jurisdiction to review these determinations, just as we may not review similar issues under § 1229b(b)(1). *See, e.g., Mireles*, 433 F.3d at 968.

Furthermore, three of the four circuits that have addressed this precise question have held that the extreme cruelty determination is discretionary and not subject to judicial review. *See Ramdane v. Mukasey*, No. 07-4064, 2008 U.S. App. LEXIS 20356, at *4 (6th Cir. Sept. 25, 2008); *Wilmore v. Gonzales*, 455 F.3d 524, 528 (5th Cir. 2006); *Perales-Cumpean v. Gonzales*, 429 F.3d 977, 982 (10th Cir. 2005). *But see Hernandez v. Ashcroft*, 345 F.3d 824, 833-35 (9th Cir. 2003).

In *Perales-Cumpean*, the Tenth Circuit explained that a non-discretionary decision is one "for which there is a clear standard, and for which no evaluation of non-discretionary criteria is required." 429 F.3d at 982. Conversely, a discretionary determination is one involving "a 'judgment call' by the agency, or for which there is 'no algorithm' on which review may be based." *Id.* To determine whether one has suffered extreme cruelty, a court must do more than "simply plug[] facts into a formula." *Id.* The Fifth Circuit agreed, comparing the extreme cruelty determination to the extreme hardship determination under § 1229b(b)(1), which it had already held was discretionary because the term was "not self-explanatory, and reasonable men could easily differ as to [its] construction."

*Wilmore*, 455 F.3d at 527 (alteration in original) (quotations omitted). The Sixth Circuit recently followed suit, noting that it previously held that extreme hardship is a discretionary decision not subject to review, and that it "[had] been given no reason to believe that extreme cruelty is treated differently." *Ramdane*, 2008 U.S. App. LEXIS 20356, at *4.

The Ninth Circuit is the only circuit to hold that the extreme cruelty determination is non-discretionary and reviewable. *Hernandez*, 345 F.3d at 833-35. In *Hernandez*, the court explained that "extreme cruelty involves a question of fact, determined through the application of legal standards." *Id.* at 834. The court compared extreme cruelty to deciding whether an applicant was battered or was a "habitual drunkard" (both of which the Ninth Circuit considers non-discretionary), and it held that extreme cruelty is a similar type of "clinical" finding. *Id.* The court also distinguished the extreme cruelty and extreme hardship determinations by noting that extreme hardship is a more nebulous standard that seeks to separate those applicants deemed particularly worthy of cancellation of removal, whereas extreme cruelty simply establishes an applicant's status as a survivor of domestic violence. *Id.* at 835.

Stepanovic acknowledges the "arduous task" of persuading this court to follow the Ninth Circuit's view that the agency's extreme cruelty determination is non-discretionary. (Petr.'s Br. 24.) His assessment is accurate. We agree with the Fifth, Sixth, and Tenth Circuits that the extreme cruelty determination is discretionary, and we

may not review the manner in which the BIA exercises its discretion. *See Mireles*, 433 F.3d at 969. As the Tenth Circuit noted, an IJ does not determine extreme cruelty by simply plugging facts into a formula or applying an algorithm. *See Perales-Cumpean*, 429 F.3d at 982. Rather, the IJ must determine the facts of a particular case, make a judgment call as to whether those facts constitute cruelty, and, if so, whether the cruelty rises to such a level that it can rightly be described as extreme. Stepanovic himself acknowledges that the agency possesses "unfettered discretion" in deciding whether a petitioner suffered extreme cruelty. (Petr.'s Br. 25.) Consequently, we find that the extreme cruelty determination under § 1229b(b)(2) falls within the jurisdiction-removal statute, and thus beyond our jurisdiction to review.

2. *The BIA's Request of Medical or Psychiatric Evidence of Harm*

Stepanovic also claims that the BIA altered the legal standard for demonstrating extreme cruelty, which he argues is a reviewable question of law under § 1252(a)(2)(D). Specifically, he states that the BIA "ratchet[ed] up" the extreme cruelty standard, which he argues is found in 8 C.F.R. § 240.2(c), by requiring psychological or medical documentation of his injury. Stepanovic argues that by so doing, the BIA imposed an unannounced, *post hoc* standard that "the BIA knows, and probably expects, petitioner cannot meet."

As previously stated, our jurisdiction is limited to review of only "pure" questions of law. *See Viracacha*, 518

F.3d at 515. A claim on appeal does not become a question of law simply because the litigant characterizes it as such. *See Zamora-Mallari v. Mukasey*, 514 F.3d 679, 694 (7th Cir. 2008) ("A petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an . . . argument in constitutional garb.") (alteration in original) (quotations omitted); *Leguizamo-Medina*, 493 F.3d at 774 ("[O]nly 'pure' legal questions (as opposed to characterizations or 'mixed' questions) are covered by subsection (D)."); *see also Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 330 (2d Cir. 2006) (rejecting petitioner's attempt to transform a factual claim into a legal question by asserting that the IJ failed to apply the law and noting that "[a] petitioner cannot overcome the lack of jurisdiction to review by invocation of such rhetoric").

Stepanovic's argument that he presents a reviewable question of law is mistaken. The BIA applied the correct legal standard—extreme cruelty—and we are not authorized to review *how* the BIA exercised its discretion under that standard. *See Mireles*, 433 F.3d at 969. At its core, Stepanovic's argument is "merely [a] quarrel[] over the correctness of the factual findings or justification for the discretionary choices." *Chen*, 471 F.3d at 329. Further, he has not convinced us that the DHS's regulation defining extreme cruelty, 8 C.F.R. § 204.2(c)(1)(vi), limits the BIA's discretion to such an extent that it may not request psychiatric or medical evidence supporting Stepanovic's claims. This is particularly so because he does not claim that he suffered physical harm, and his ex-wife's conduct is not objectively extreme or cruel. As we

have already stated, the extreme cruelty determination is discretionary. While the DHS's definition may be helpful in deciding whether an applicant suffered extreme cruelty, the regulation *itself* provides considerable discretion by using the "phrases 'includes, but is not limited to' and 'may . . . be acts of violence under certain circumstances.'" *Perales-Cumpean*, 429 F.3d at 984 (alteration in original) (quoting 8 C.F.R. § 204.2(c)(1)(vi)); *see also Wilmore*, 455 F.3d at 527 (agreeing with *Perales-Cumpean* that the DHS regulation does not render the extreme cruelty determination non-discretionary). Therefore, the regulation does not constrain the BIA's discretion to such an extent that the BIA's order in this case exceeded its bounds.

Furthermore, even if the regulation defining extreme cruelty did limit the BIA's discretion to some extent, the BIA did nothing in this case to *alter* that definition, nor did the BIA create a new prerequisite for relief under § 1229b(b)(2). Here, the BIA did not *require* psychological or medical evidence of Stepanovic's injury when it concluded that Stepanovic "failed to establish that he was the victim of extreme cruelty by his ex-wife, and he failed to adequately support his claim with psychiatric or medical documents, or *other evidence* which would establish that his psychological or emotional suffering rose to the level of 'extreme cruelty.'" Rather, the BIA simply explained that Stepanovic failed to produce evidence to meet his burden of proof, in part because he presented no medical evidence of harm. Requiring an applicant to prove an element of his petition for cancella-

tion of removal is certainly distinct from altering the legal framework under which the applicant may receive such relief. In reality, Stepanovic challenges the BIA's factual determination that he was not subject to extreme cruelty, and he attempts to re-characterize this issue as a "question of law." But it is not such a question.

### III.  CONCLUSION

Stepanovic appeals the BIA's determination that he did not suffer cruelty that was sufficiently extreme to receive cancellation of removal pursuant to § 1229b(b)(2). Because this determination falls squarely within the jurisdiction-removal statute, and Stepanovic presents no "reviewable" question of law or constitutional claim, we lack jurisdiction to review it according to § 1252(a)(2)(B). For the above reasons, Stepanovic's petition for review is DISMISSED for lack of jurisdiction.