**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0806n.06

No. 08-4586

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 17, 2009**

LEONARD GREEN, Clerk

ALBERT KAWUWUNG; TUTI MONITA; BILLY )
MARZEL KAWUWUNG, )
                                      )
      Petitioners, )
                                      )
      v. )
                                        )
ERIC H. HOLDER, Jr., Attorney General, )
                                      )
      Respondent. )
                                        )

ON PETITION FOR REVIEW
OF AN ORDER OF THE
BOARD OF IMMIGRATION
APPEALS

---

**BEFORE: SILER, GILMAN, and ROGERS, Circuit Judges.**

      **ROGERS, Circuit Judge.** Petitioners Albert Kawuwung, Tuti Monita, and Billy Marzel

Kawuwung—husband, wife, and son respectively—petition for review of the decision of the Board

of Immigration Appeals (BIA) that affirmed the removal order of the Immigration Judge (IJ).

Petitioners are citizens of Indonesia who request relief from removal because they are Seventh Day

Adventists who claim to fear returning to Indonesia. They argue that the IJ ought to have recused

herself because she was the Chief Counsel of the Department of Homeland Security Office in

Detroit, Michigan, when that office initiated the present immigration removal proceedings.

Petitioners further argue that they are entitled to withholding under 8 U.S.C. § 1231(b)(3). Because

petitioners failed to exhaust their claim that the IJ should have recused herself, and because the

decisions of the IJ and the BIA were supported by substantial evidence, petitioners are not entitled to relief.

Petitioners entered the country as non-immigrant visitors on February 25, 2001. They overstayed their visas, and the Department of Homeland Security (DHS) served each of the petitioners with a notice to appear. Petitioners conceded that they were subject to removal and requested withholding of removal and protection under the Convention Against Torture (CAT).[1] Petitioners contend that they fear returning to Indonesia because they are Seventh Day Adventists and because of a series of incidents that occurred before they left that country. Albert Kawuwung testified at the December 8, 2006, hearing that he was fifty-nine years old and had been a Seventh Day Adventist since 1967. He recounted specifically that in July, 2000, when he was the elder of his church, a church custodial worker found a threatening pamphlet hung on the fence of the church. The pamphlet threatened that churches would be burned and implied that congregation leaders and their families would be harmed. Mr. Kawuwung presented the letter to the chief of the village, and the chief arranged for police protection of the church. The church was never harmed.

Mr. Kawuwung further testified that in September, 1999, Billy Kawuwung and his older brother Maikel were returning home from Bible class at church when some people stopped them and requested a cigarette. Maikel told the people that he and his brother were Adventists and did not smoke, at which point someone "pushed [the] oldest son and then said it's not necessary to go to

---

[1]Albert Kawuwung and Tuti Monita's cases were consolidated. Their son Billy Marzel Kawuwung's case was heard at the same time because it involved the same claimed bases for relief. Because the issues in the present petition do not require separate treatment of the consolidated case and the related case, we follow the BIA's decision in addressing these cases jointly.

church." At this time, a car approached the group, and the people confronting the two brothers scattered. Mr. Kawuwung testified that he believed that the people would have hit his sons if not for the intervening car. Mr. Kawuwung had not witnessed this event, but had only heard of it from his sons and from the people whose car had approached. Tuti Monita testified that her sons had given her the same account of the event.

During his testimony, Billy Kawuwung agreed with the broad outline of this event but added additional details. He stated that he "roughly recognized" the other people as being from "the next neighborhood, the Muslim neighborhood." He also testified that the other people had warned them not to go to church because it was going to be burned. On cross-examination, Billy specified that he knew the people because he had met them through some of his friends. He had not told his parents at the time that he knew who the people were because he did not want his father to report them to the police and create a larger incident.

Mr. Kawuwung additionally testified that he was employed as a fishery instructor for the government. He stated that, at some point, his Christian supervisor at his government job had been replaced by a Muslim supervisor. From then on, Mr. Kawuwung was forced to work on Saturdays, in violation of his religious beliefs. Mr. Kawuwung also testified at the hearing to an event not included in his asylum application involving a work-related trip. He recounted that, in 1998, he was required to make a trip to a different region of Indonesia, Central Sulawesi, and to provide training there in the region's capital city, West Palu. He was then required to gather information about two smaller cities, Poso and Parigi. He testified that he returned home early after friends in Central

Sulawesi agreed to gather the information from Poso and Parigi. Just after he returned home, there was a riot in Poso, and Mr. Kawuwung testified that he suspected that his Muslim boss had arranged for the trip "on purpose," but that he did not know this to be true.

On cross-examination, Mr. Kawuwung stated that his three other children were also Christians, that they remained in Indonesia, and that no harm had come to them after his departure from Indonesia.

On April 22, 2004, Tuti Monita filed a motion to consolidate her application with that of her husband. DHS filed a response indicating that it did not oppose the motion. This motion was signed by Catherine Pincheck, who was then the Assistant Chief Counsel of the Detroit DHS office, on behalf of Marsha Kay Nettles, then the Chief Counsel. In 2006, Nettles, who had since become an IJ, conducted the immigration hearing and rendered the decision at issue in this appeal.

IJ Nettles denied petitioners' applications for withholding of removal and for CAT protection. The IJ did not make an adverse credibility finding but concluded that the incidents testified to by petitioners did not rise to the level of persecution. The IJ also concluded that petitioners' fear of persecution "is significantly reduced in light of the fact that three adult family members all remain in Indonesia unharmed." The IJ further noted that there was no evidence of past torture and no relevant basis on which to fear future torture. The IJ therefore denied petitioners' applications. The BIA affirmed, and petitioners filed this timely appeal.

We decline to hear petitioners' recusal claim because it was not administratively exhausted. This court has previously held that it may not "consider claims that have not been administratively

exhausted," *Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009) (citing 8 U.S.C. § 1252(d)(1)), and has applied this requirement to due process claims where those claims "raise correctable procedural errors," *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *see also, e.g.*, *Lin*, 565 F.3d at 979 (refusing to review a due process claim because of lack of exhaustion); *Sswajje v. Ashcroft*, 350 F.3d 528, 533 (6th Cir. 2003) (same). Further, in *Mireles v. Gonzales*, 433 F.3d 965, 968 (7th Cir. 2006), the Seventh Circuit held that it could not consider a claim that was essentially identical to the claim at issue here because of a failure to exhaust. In *Mireles*, the IJ had previously served as an Immigration and Naturalization Service (INS) District Counsel, and the IJ's name was on the INS's response to one of the respondent's motions in the removal proceedings. *Id.* The court in *Mireles* noted that the respondent "did not submit any evidence pertinent to this subject (or seek discovery), did not ask [the IJ] to recuse herself, and did not contend on appeal to the [BIA] that she should have done so *sua sponte*." *Id.* The Seventh Circuit concluded that the respondent had failed to exhaust his administrative remedies and thus that the court could not consider the claim. *Id.* The same conclusion applies in the present case.

The failure of petitioners' previous counsel to recognize and thus present this claim does not excuse the failure to exhaust. Petitioners argue that it might not have been possible to exhaust this claim administratively because counsel before the IJ may not have noticed the issue and because a complete file might not have been forwarded to the new counsel who represented petitioners before the BIA. Petitioners cite *Alcaraz v. INS*, 384 F.3d 1150, 1158-59 (9th Cir. 2004), for the proposition that courts of appeals "do not require an alien to exhaust administrative remedies on legal issues

based on events that occur *after* briefing to the BIA has been completed." Here, however, the only relevant events—Nettles' alleged involvement in the case as Chief Counsel and her adjudication of the case as an IJ—occurred before briefing to the BIA was completed. Indeed, petitioners' counsel before the IJ had been served the document upon which their present counsel rely two years prior to the hearing before the IJ. Because petitioners were in possession of all relevant information at the time of the IJ hearing, they were required to exhaust their recusal claim and cannot raise this issue for the first time now on appeal.

Rules granting exceptions to exhaustion requirements are inapplicable to this case. Petitioners contend, relying on *Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006), that exhaustion is not required for constitutional challenges. This overstates the scope of the *Bangura* rule; as discussed above, due process challenges often require exhaustion. *Bangura* relied upon two facts not present here to reach the conclusion that exhaustion was not required in that case: First, it was "undisputed that no statute or administrative rule required Plaintiffs to exhaust their administrative remedies" in that case. *Id.* at 494. Second, the BIA did not "have the authority to adjudicate Plaintiffs' substantive due process claim." *Id.* Here, by contrast, 8 U.S.C. § 1252(d)(1) requires exhaustion because this is a removal action, and petitioners have not presented any claims outside the adjudicative scope of the BIA. This court therefore is precluded from considering petitioners' recusal claim.

The decisions of the IJ and the BIA denying withholding of removal must be affirmed because they are supported by substantial evidence.[2] *See Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (stating the standard). To receive a withholding of removal, an applicant must demonstrate that, if removed to his home country, his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). To satisfy this burden, the applicant must establish a "clear probability" of persecution on one of the enumerated grounds, which requires a showing that it is "more likely than not" that he will be persecuted upon his return. *INS v. Stevic*, 467 U.S. 407, 429 (1984); *see also Sarr v. Gonzales*, 485 F.3d 354, 361-62 (6th Cir. 2007). "If an alien can establish that he has been subject to past persecution, there is a presumption, subject to rebuttal by the Government, that his life or freedom would be threatened in the future in the country of removal." *Gjyzi v. Ashcroft*, 386 F.3d 710, 715 (6th Cir. 2004) (internal quotation marks omitted) (citation omitted); *see also* 8 C.F.R. § 1208.16(b)(1). Here, the IJ determined that the incidents alleged by petitioners did not "rise to the level of persecution as contemplated by the [Immigration and Nationality] Act" because, "[a]t best, we have a threatening note and isolated incidents of harassment or intimidation." Noting that the incident involving the two sons could be reasonably interpreted to be a "neighborhood dispute" rather than religious persecution, that Mr. Kawuwung's three children who remain in Indonesia have not come to any harm, and that the local government had proved both willing and able to protect petitioners' church, the IJ denied withholding of removal. The BIA noted similarly that petitioners

---

[2]Because petitioners do not raise the BIA's and the IJ's denial of their CAT application in their brief, that issue is forfeited.

had never been physically harmed in Indonesia, that their local government had proved responsive to their security concerns, and that their family remained unharmed there. The BIA thus dismissed the appeal. These decisions are reasonable and supported by substantial evidence. The limited number of incidents and the lack of physical harm to petitioners leave them unable to establish past persecution, for "persecution consists of 'more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)). Nor have petitioners presented evidence sufficient to establish that they would more likely than not suffer future persecution were they to return to Indonesia. *Cf. Vanderkley v. Holder*, No. 08-3895, 2009 WL 2767119, at *7 (6th Cir. Sept. 1, 2009) (upholding an IJ's determination that Seventh Day Adventist petitioners had not established a clear probability of future persecution in Indonesia); *Manorek v. Mukasey*, 260 F. App'x 810, 812 (6th Cir. 2008) (upholding an IJ's determination that an alleged Chinese Christian petitioner had not established a clear probability of future persecution in Indonesia). The decisions of the IJ and the BIA are thus supported by substantial evidence.

We therefore deny the petition for review because petitioners failed to exhaust their recusal claim and because the substantive decisions of the BIA and of the IJ were supported by substantial evidence.