**PUBLISH**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

HECTOR BARRERA-QUINTERO, a/k/a
Hector Barrera Quintero,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 11-9522

---

**ON PETITION FOR REVIEW OF AN ORDER OF**
**THE BOARD OF IMMIGRATION APPEALS**

---

Edward L. Carter, Keen Law Offices, LLC, Orem, Utah (J. Christopher Keen, Keen Law
Offices, LLC, Orem, Utah, with him on the brief), for Petitioner.

Walter Bocchini, Office of Immigration Litigation, Civil Division, United States
Department of Justice, Washington, D.C. (Tony West, Assistant Attorney General, and
Janice K. Redfern, Senior Litigation Counsel, Office of Immigration Litigation, Civil
Division, United States Department of Justice, Washington, D.C., with him on the brief),
for Respondent.

---

Before **KELLY**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

**INTRODUCTORY STATEMENT**

Hector Barrera–Quintero, a native and citizen of Mexico, faces removal from this country. He seeks review of a Board of Immigration Appeals (BIA) decision finding him ineligible for cancellation of removal. Because Congress tightly constrains our power to review discretionary aspects of the BIA's orders of removal, we must DISMISS IN PART his petition for lack of jurisdiction. But we are not similarly limited in our review of constitutional claims and questions of law involving statutory construction. In this case, Mr. Barrera's[1] eligibility for cancellation of removal hinges on whether he has maintained at least ten years of continuous physical presence in this country, as required by the terms of 8 U.S.C. § 1229b(b)(1)(A). Because the BIA relied on a reasonable statutory construction in finding Mr. Barrera failed to satisfy the continuous-presence requirement, we DENY the remainder of the petition for review.

## I.  BACKGROUND

### A.  Facts

Mr. Barrera was born in the state of Jalisco, Mexico, in 1974. He entered the United States in May of 1990 without inspection or authorization by an immigration officer. To put it more bluntly, Mr. Barrera came to this country illegally. With the exception of a two-month span in 2004, he has lived here since his 1990 arrival. Mr. Barrera initially settled in southern California. In 1993, he pleaded nolo contendere to

---

[1] We follow Mr. Barrera's lead in referring to him as Mr. Barrera rather than Mr. Barrera–Quintero.

willful infliction of corporal injury on a spouse, a violation of California Penal Code § 273.5(a). He was sentenced to a term of probation and community service. That same year, his son—a United States citizen—was born. Over the next ten years, Mr. Barrera worked as a carpenter and carpet layer in various California cities before making his way to Utah.

On June 1, 2004, Mr. Barrera was arrested at a Utah Driver License Division office in St. George, Utah after being found with a fake Social Security card. He pleaded guilty to violating Utah Code Ann. § 76-8-511, which prohibits the falsification or alteration of government records. Following his conviction, immigration officials took Mr. Barrera into custody and presented him with a single-page Spanish-language document known as a Form I-826. The document stated that immigration officers believed he was in the United States illegally and advised him of his right to a hearing before the Immigration Court. The document then instructed Mr. Barrera to elect one of three options, the selection of which he was to indicate by checking a box and initialing next to his choice. He could (1) ask for a hearing before the Immigration Court to determine his admissibility; (2) seek an asylum hearing; or (3) acknowledge he was in the United States illegally, waive his right to a hearing, and request return to Mexico.

Mr. Barrera chose the third option: voluntary return to Mexico in lieu of a hearing on admissibility. He signed and dated the Form I-826 and inscribed a check mark and his initials next to the section stating, in relevant part, "I admit that I am in the United States illegally, and I believe I do not face harm if I return to my country. I give up my right to

a hearing before the Immigration Court. I wish to return to my country . . . ." R. at 473.[2]

On June 10, 2004, Mr. Barrera returned to Mexico, crossing the border at the San Ysidro, California port of entry.

He likely reentered the United States on or around August 15, 2004, some sixty-six days later.[3] As was the case in 1990, no immigration officer authorized Mr. Barrera's entry. In March of 2007, he was again arrested in Utah for attempting to obtain a driver's license using fraudulent documents. This time, immigration officials served him with a Notice to Appear, a document charging him as an alien illegally present in the United States and subject to removal from this country under 8 U.S.C. § 1182(a)(6)(A)(i).

### B.  Proceedings Before the Immigration Judge

Conceding that he was unlawfully present in the United States and thus removable as charged in the Notice to Appear, Mr. Barrera applied for cancellation of removal under 8 U.S.C. § 1229b. The Attorney General has discretionary authority to cancel the removal of a nonlawful resident who

---

[2]    To be clear, the form signed by Mr. Barrera contained this language in Spanish, *see* R. at 474, and there is no dispute that Mr. Barrera can read and understand Spanish. The English translation recited here comes from an English-language Form I-826 contained in the Certified Administrative Record, *see id.* at 473, and the accuracy of the translation is not in dispute. The English-language form is entitled Notice of Rights and Request for Disposition; the Spanish-language form is entitled Notificación de Derechos y Solicitud de Resolución.

[3]    We note that Mr. Barrera, at a hearing before the Immigration Judge, later denied reentering the United States on or around August 15, 2004. *See* R. at 176. Mr. Barrera did not advance any evidence in support of this contention. At any rate, a precise temporal pinpoint for his reentry is not necessary. Here, the legally significant event is his 2004 departure from, not his eventual return to, this country.

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). The Government moved to pretermit Mr. Barrera's application, arguing that his voluntary return to Mexico in 2004 broke his continuous physical presence in the United States under the standards articulated by the BIA in *In re Romalez–Alcaide*, 23 I. & N. Dec. 423 (B.I.A. 2002), and *In re Avilez–Nava*, 23 I. & N. Dec. 799 (B.I.A. 2005). *Romalez–Alcaide* and *Avilez–Nava*, the definitive BIA cases outlining the parameters of § 1229b(b)(1)(A)'s continuous-presence requirement, hold that a nonlawful resident's continuous physical presence ends when he voluntarily departs the United States under threat of removal proceedings. The Government contended that Mr. Barrera's 2004 departure fell squarely within the rule of *Romalez–Alcaide* and *Avilez–Nava*, thus depriving him of eligibility for cancellation of removal as a matter of law.

Mr. Barrera countered that immigration officers did not inform him of his rights while in their custody in 2004. For this reason, he argues, his "voluntary return" to Mexico was not voluntary at all. As such, it would not count as a presence-breaking departure from the United States for purposes of calculating his continuous physical

presence in this country under § 1229b(b)(1)(A). Mr. Barrera stated that the immigration officers "seemed very rushed," did not in any way explain his rights to him, and told him he "had two choices, either to stay in jail, or be deported to Mexico." R. at 478. Mr. Barrera alleged that the immigration officer who presented him with the Spanish-language Form I-826 merely "checked off on the lines where [he] was supposed to sign," leaving him "unaware of the contents of the document." *Id.* Mr. Barrera further claimed that the Form I-826 and other supporting documentation contained various errors, misstatements, and omissions.

Mr. Barrera also filed a motion seeking to compel the in-person testimony of the immigration officer who prepared and signed his 2004 departure paperwork, Rexall Griggs. The Immigration Judge did not directly rule on Mr. Barrera's motion. Instead, the Immigration Judge deemed the motion moot because the Government had made Officer Griggs available to testify by telephone. The Immigration Judge determined this would give Mr. Barrera an adequate opportunity for cross-examination of Officer Griggs.

The Immigration Judge found Mr. Barrera ineligible for cancellation of removal on two independent grounds. First, the Immigration Judge concluded that Mr. Barrera's 2004 departure had broken the requisite ten years' worth of continuous physical presence in the United States immediately preceding the date of his cancellation application. Second, the Immigration Judge determined that Mr. Barrera's California and Utah convictions were both for crimes involving moral turpitude, a type of offense listed under § 1182(a)(2). A conviction of a crime involving moral turpitude forecloses eligibility for cancellation under § 1229b(1)(C).

## C. The BIA's Order

Mr. Barrera appealed the decision of the Immigration Judge to the BIA. Relying on its precedent in *Romalez–Alcaide* and *Avilez–Nava*, the BIA affirmed the Immigration Judge's determination that Mr. Barrera's 2004 departure under threat of the institution of removal proceedings ended his unbroken accrual of continuous physical presence in the United States. Finding next that Mr. Barrera's 1993 California conviction was for a crime involving moral turpitude (it did not reach the matter of his Utah conviction), the BIA dismissed his appeal in a single-member-issued opinion. In sum, the BIA held that Mr. Barrera was removable from the United States as charged and not eligible for cancellation of removal.

## II. DISCUSSION

### A. Jurisdiction, Deference, and Standard of Review

A jurisdictional inquiry stands at the threshold of our review of a cancellation-of-removal case. *See Sabido Valdivia v. Gonzales*, 423 F.3d 1144, 1147 (10th Cir. 2005). This is because Congress has chosen to curtail judicial review of orders of removal. By statute, no court has jurisdiction to review "any judgment regarding the granting of relief under section . . . 1229b." 8 U.S.C. § 1252(a)(2)(B)(i). But this language does not sweep so broadly as it might seem, for "[w]e have construed the term 'judgment' in this subsection as referring to the discretionary aspects of a decision concerning cancellation of removal," including any "underlying factual determinations." *Arambula–Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009); *see also Sabido Valdivia*, 423 F.3d at 1148

("[O]nly decisions involving the exercise of discretion fall within . . . § 1252's definition of a 'judgment.'").  By that same token, we have retained the power to review decisions of the BIA that "turn[] on the evaluation of non-discretionary criteria."  *Sabido Valdivia*, 423 F.3d at 1149.

We "have jurisdiction to review 'constitutional claims' and 'questions of law.'" *Arambula–Medina*, 572 F.3d at 828 (quoting 8 U.S.C. § 1252(a)(2)(D)).[4]  We review questions of law and statutory construction de novo.  *See Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1019 & n.5 (10th Cir. 2007).  Where Congress has not made clear its intent in enacting an immigration statute, we give appropriate deference to the BIA's interpretation of the statute at issue.  *See Padilla–Caldera v. Holder*, 637 F.3d 1140, 1147 (10th Cir. 2011).  In doing so, we apply the two-step test announced in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).

Under the *Chevron* test, "a court gives deference to an agency's interpretation of a statute Congress charged it with administering if the statute is silent or ambiguous on the question at hand and the agency's interpretation is not arbitrary, capricious, or manifestly contrary to the statute."  *Efagene v. Holder*, 642 F.3d 918, 920 (10th Cir. 2011) (citation omitted).  But not all agency interpretations are created equal.  We will defer to the

---

[4]     The terms of § 1252(a)(2)(D) provide:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

agency's interpretation only when "the agency acts in a lawmaking capacity." *Id.* "When the interpretation occurs in an adjudication, the agency acts in a lawmaking capacity if the decision is binding precedent within the agency." *Id.*

The BIA order dismissing Mr. Barrera's appeal was authored by a single BIA member, as opposed to a panel of members. A single BIA member may not "create rules of law that bind the agency in other cases." *Carpio v. Holder*, 592 F.3d 1091, 1097 (10th Cir. 2010) (citing 8 C.F.R. § 1003.1(e)(6)(ii), (g)). Notwithstanding this general rule, "*Chevron* deference may apply to a nonprecedential BIA decision if it relies on prior BIA precedent addressing the same question." *Efagene*, 642 F.3d at 920. And such is the case here. In finding that Mr. Barrera was statutorily ineligible for cancellation of removal, the authoring BIA member invoked the BIA's precedential statements in *Romalez–Alcaide* and *Avilez–Nava* interpreting § 1229b(b)(1)(A). Absent a finding that the reasoning of *Romalez–Alcaide* and *Avilez–Nava* is "arbitrary, capricious, or manifestly contrary to the statute," *Chevron*, 467 U.S. at 844, we will uphold the BIA's determination in this case.

Where, as here, the BIA issues a brief order on the merits by a single BIA member under 8 C.F.R. § 1003.1(e)(5), that decision "constitutes the final order of removal under 8 U.S.C. § 1252(a)." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We limit our grounds for affirmance to those articulated in the BIA's final order. Nevertheless, "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the [Immigration Judge]'s more complete explanation of those same grounds." *Id.* Finally, in reviewing the BIA's factual findings, we are bound by

Congress's directive that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Guided by these precepts—and not unmindful of our jurisdictional limitations—we now turn to the arguments raised by Mr. Barrera in his petition for review.

## B. Analysis

### 1. The BIA's Interpretation of the Continuous-Physical-Presence Standard

Mr. Barrera first challenges the BIA's application of *Romalez–Alcaide* to the continuous-presence inquiry. In *Romalez–Alcaide*, the BIA considered § 1229b(d)(2), which provides:

> An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsection[] (b)(1) . . . of this section if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

The BIA concluded that the time periods set forth in the statute did not comprise "the exclusive measure of what constitutes a break in continuous physical presence," holding instead "that a departure that is compelled under threat of the institution of deportation or removal proceedings is a break in physical presence for purposes of section [1229b(b)(1)(A)]" cancellation. *Romalez–Alcaide*, 23 I. & N. Dec. at 424. Mr. Barrera disagrees, arguing that the statutory periods are exclusive.

Until the Government charged Mr. Barrera with removability in March of 2007, he had lived in the United States for almost seventeen years. During that time, he left the country only once: from June to August of 2004. His total time absent from the United

-10-

States during those seventeen years amounted to about sixty-six days, a number well within the limits prescribed by the statute. Yet this fact is of little comfort to Mr. Barrera, for the BIA does not construe the statutory language as establishing "the *exclusive* rule respecting *all* departures," such that it would "literally forgive any single departure of 90 days or less or aggregate departures of 180 days or less." *Id.* at 425.

Because this issue raises a question of statutory construction, we have jurisdiction over its resolution under § 1252(a)(2)(D). By our count, six of our sister circuits have given deference to *Romalez–Alcaide* under the principles announced in *Chevron*. *See Ascencio–Rodriguez v. Holder*, 595 F.3d 105, 112-13 (2d Cir. 2010); *Mendez–Reyes v. Att'y Gen'l*, 428 F.3d 187, 191-92 (3d Cir. 2005); *Morales–Morales v. Ashcroft*, 384 F.3d 418, 427 (7th Cir. 2004); *Palomino v. Ashcroft*, 354 F.3d 942, 944-45 (8th Cir. 2004); *Mireles–Valdez v. Ashcroft*, 349 F.3d 213, 217-18 (5th Cir. 2003); *Vasquez–Lopez v. Ashcroft*, 343 F.3d 961, 972-73 (9th Cir. 2003) (per curiam). These courts have generally concluded that, although § 1229b(d)(2) sets out certain time limits establishing when continuous physical presence is deemed broken, the statute is silent as to whether other events could also end a nonlawful resident's otherwise unbroken period of continuous physical presence. We now join those courts in holding that the BIA's interpretation of the continuous-physical-presence statute, as expressed in *Romalez–Alcaide* and further developed in *Avilez–Nava*,[5] is reasonable and entitled to *Chevron* deference.

---

[5] *Avilez–Nava* concerned a nonlawful resident who briefly left the United States and was then refused admittance by immigration officers upon her return to the border. The BIA held
Cont. . .

Section 1229b(d)(2) does not directly speak to whether a voluntary departure under threat of the institution of removal proceedings can break a nonlawful resident's continuous presence for purposes of cancellation of removal. In other words, we find the statute does not reveal "the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. Having established that "Congress has not directly addressed the precise question at issue," we must next decide "whether the agency's answer is based on a permissible construction of the statute." *Id.* In doing so, we acknowledge "that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844.

The subsection heading of § 1229b(d)(2) is captioned "Treatment of certain breaks in presence." In *Romalez–Alcaide*, the BIA reasoned that in specifically singling out "certain breaks," Congress thereby "strongly impl[ied] that there can be 'breaks' other than those which exceed the 90- or 180-day statutory limits." 23 I. & N. Dec. at 425. Likewise, "[t]he objective command that departures of certain lengths 'shall' break continuous physical presence implies that shorter departures are acceptable, but it does not specifically exempt all such shorter departures." *Id.* at 426 (quoting § 1229b(d)(2)). Cont._____

> that an immigration official's refusal to admit an alien at a land border port of entry will not constitute a break in the alien's continuous physical presence, unless there is evidence that the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to withdraw his or her application for admission, *or was subjected to any other formal, documented process* pursuant to which the alien was determined to be inadmissible to the United States.

(emphasis added). 23 I. & N. Dec. at 805-06.

In essence, the BIA found the purpose of voluntary return in lieu of removal proceedings to be incompatible with a statute giving a nonlawful resident the benefit of discretionary cancellation of removal: "The clear objective of an enforced departure is to remove an illegal alien from the United States. There is no legitimate expectation by either of the parties that an alien could illegally reenter and resume a period of continuous physical presence." *Id.* at 429.

We do not find the BIA's construction of § 1229b(d)(2)'s continuous-physical-presence language to be "manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. The agency's interpretation is, in a word, reasonable. And "[a]s long as the interpretation is reasonable, we must defer to the agency's construction of the statute even though it may not conform with how we would interpret the statute in an original judicial proceeding." *Tapia Garcia v. Holder*, 237 F.3d 1216, 1220 (10th Cir. 2001). The agency's interpretation need not persuade with elegant clarity of thought; it need not speak to our highest sense of fair dealing; it need not even appear to us very wise. Our deference is not so dearly purchased. We require only reasonableness from the agency. The BIA has at least cleared that hurdle in interpreting and applying § 1229b(d)(2) in *Romalez–Alcaide*. Accordingly, we defer to the rationale employed by the BIA in concluding that Mr. Barrera's return to Mexico under threat of removal in 2004— although less than ninety days in duration—broke his continuous physical presence in this country.

2. *Discretionary Aspects of the BIA's Decision on Cancellation of Removal*

We next consider Mr. Barrera's argument that immigration officers did not

adequately inform him of his rights before he requested return to Mexico in 2004. Mr. Barrera claims he was not subject to a formal, documented process while detained in Government custody: the relevant paperwork was flawed, the immigration officers were coercive, and he was never told that his return was in lieu of removal proceedings. The gravamen of Mr. Barrera's argument is that he could not voluntarily have left the United States under threat of removal proceedings—by that very act, breaking his continuous presence—if he was not meaningfully informed of his legal rights and the consequences of the choices presented to him on the Spanish-language Form I-826.

This argument is not properly before us in disposing of the instant petition for review. We lack jurisdiction to consider "the discretionary aspects of a decision concerning cancellation of removal." *Arambula–Medina*, 572 F.3d at 828. The BIA's determination on voluntariness in this case implicated precisely such an exercise of agency discretion. "The determination of whether a particular decision is discretionary or non-discretionary is made on a case-by-case basis." *Perales–Cumpean v. Gonzales*, 429 F.3d 977, 982 (10th Cir. 2005). We have characterized a discretionary BIA decision as one "that involve[s] a 'judgment call' by the agency, or for which there is 'no algorithm' on which review may be based." *Id.* (quoting *Sabido Valdivia*, 423 F.3d at 1149) (quoting *Morales Ventura v. Ashcroft*, 348 F.3d 1259, 1262 (10th Cir. 2003)).

Mr. Barrera's arguments on voluntariness are fact-bound. But the resolution of those arguments "involves more than simply plugging facts into a formula." *Perales–Cumpean*, 429 F.3d at 982. The BIA was tasked with ascertaining whether Mr. Barrera's 2004 departure was voluntary and whether he made that decision knowingly and

-14-

intelligently. Fourth Amendment jurisprudence teaches that "[v]oluntariness is a question of fact to be determined from all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973). We think this principle has equal applicability to the immigration-law context. Voluntariness follows no formula. It does not have a prefabricated, "mechanically applicable" meaning readily adducible in any situation. *Id.* at 224. Definitive determinations on issues of voluntariness must depend on the judicious application of discretionary judgment.

In two recent unpublished decisions, this court has said that § 1252(a)(2)(B)(i) bars review of whether an enforced departure was voluntary.[6] In *Salas–Acuna v. Holder*, 383 F. App'x 783, 788 (10th Cir. 2010), we concluded that whether a departure was "under a threat of deportation is a factual question underlying a discretionary aspect of the BIA's decision concerning cancellation of removal which we are prohibited from reviewing under § 1252(a)(2)(B)(i)." And in *de la Cruz Zacarias v. Holder*, 367 F. App'x 932 (10th Cir. 2010), which is particularly analogous to this case, we likewise determined that the question of voluntariness was a factual matter, noting that the petitioner's arguments were "especially fact-bound" and that the BIA's decision "turned on the factual record"—in particular, on whether "the paperwork process was rushed" and whether the petitioner was adequately informed of his rights. *Id.* at 936 (quotations omitted). Endorsing the reasoning of *Salas–Acuna* and *de la Cruz Zacarias*, we

---

[6] Although these unpublished cases are not precedential, we find them persuasive and cite them for that value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

acknowledge that the issue of voluntariness in cancellation-of-removal cases implicates a fact-driven inquiry that necessarily involves the use of discretion on the part of the agency. By statutory command, these discretionary determinations lie beyond the reach of our review.[7]

### 3. The Cross-Examination of Officer Griggs

Finally, we turn to Mr. Barrera's argument that the Immigration Judge violated his due-process rights by denying his motion to require the in-person testimony of Rexall Griggs, the immigration officer who prepared Mr. Barrera's 2004 departure paperwork.[8] Removal proceedings must conform to the fundamental constitutional requirements of procedural due process: "[N]o person shall be deprived of his liberty without opportunity, at some time, to be heard, before such [administrative] officers, in respect of the matters upon which that liberty depends . . . ." *The Japanese Immigrant Case*, 189 U.S. 86, 101

---

[7] Implicit in this statement is our recognition that "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). Because of this, our power of review over the executive branch's immigration decisions is "narrow." *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21 (1976). And "in the current state of immigration law," this power is often so straitened that frequently "we are left with no choice" at all in jurisdictional matters. *Alvarez–Delmuro v. Ashcroft*, 360 F.3d 1254, 1257 (10th Cir. 2004) (Lucero, J., concurring in judgment).

[8] Although the Government contends that Mr. Barrera has not challenged this ruling on petition for review, we disagree. *See* Pet'r's Opening Br. at 17-18. But we also disagree with Mr. Barrera that the BIA failed to discuss his argument that the Immigration Judge's ruling violated his due-process rights. *See* R. at 9 ("Moreover, we agree with the Immigration Judge that the ICE agent's telephonic testimony sufficed as admissible evidence where the respondent had a meaningful opportunity to cross-examine him and has not demonstrated any prejudice.").

(1903). Because cancellation of removal is a purely discretionary form of relief granted to one with no constitutional right to remain in the country, "the only protections afforded are the minimal procedural due process rights for an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Arambula–Medina*, 572 F.3d at 828 (quoting *de la Llana Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994)).

Officer Griggs, a Senior Special Agent with U.S. Immigration and Customs Enforcement, testified over the telephone at Mr. Barrera's hearing before the Immigration Judge in Salt Lake City on May 6, 2009. At the time of the hearing, Officer Griggs was stationed in Tucson, Arizona. Mr. Barrera claims he was deprived of his right to a meaningful cross-examination of Officer Griggs because his demeanor as a witness could not be scrutinized over the telephone. Mr. Barrera argues that a visual evaluation of Officer Griggs was essential to assessing the credibility of his testimony at the hearing.

In this case, we do not believe that the fact Officer Griggs testified by telephone offended Mr. Barrera's right to procedural due process at his removal hearing. We emphasize that "[r]emoval proceedings are civil in nature, and the extensive constitutional safeguards attending criminal proceedings do not apply." *Schroeck v. Gonzales*, 429 F.3d 947, 951 (10th Cir. 2005). In a removal proceeding, "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B); *see also* 8 C.F.R. § 1240.10(a)(4). Fundamental fairness demands nothing less. But it does not automatically follow that every witness must be physically present for cross-examination in a removal proceeding.

-17-

Department of Justice regulations expressly permit an Immigration Judge to conduct telephonic hearings. *See* 8 C.F.R. § 1003.25(c). And this is not unique to immigration cases. Federal Rule of Civil Procedure 43(a) contemplates that a judge "may permit testimony in open court by contemporaneous transmission from a different location." Telephonic testimony is not categorically inappropriate in civil proceedings.

We agree that in the instant case the nonlawful resident was given the opportunity for a full and thorough examination of the witness, and his right to procedural due process was not violated here by the taking of telephonic testimony. *See Akinwande v. Ashcroft*, 380 F.3d 517, 521-22 (1st Cir. 2004); *Beltran–Tirado v. I.N.S.*, 213 F.3d 1179, 1185-86 (9th Cir. 2000). That said, we should not be understood as wholeheartedly endorsing the use of telephonic testimony as a readily interchangeable substitute for in-person, in-court testimony in removal proceedings. The ability to evaluate a witness's demeanor still may serve as an element of the mix that makes up a thorough search for the truth, but we hold that this is not always a *sine qua non* factor. We note that Federal Rule of Civil Procedure 43(a), while giving a measure of legitimacy to telephonic and video testimony, does so at arm's length and only "[f]or good cause in compelling circumstances and with appropriate safeguards." The Supreme Court has said that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Here, however, we are persuaded that this removal proceeding is not the type of setting that required the witness to be confronted in person by the nonlawful resident contesting removal. But we do not disclaim the possibility that,

-18-

under facts not presented here, the lack of in-person confrontation might so undercut the purposes of cross-examination as to deprive a nonlawful resident of the fundamental protections of procedural due process.

In this case, it is not disputed that Officer Griggs was hundreds of miles away from the site of Mr. Barrera's removal hearing. His absence from the hearing was legitimate and not contrived. Officer Griggs was under oath, and the record shows that counsel for Mr. Barrera examined him at length. *See* R. at 316-41, 346-47. The Immigration Judge found that Mr. Barrera had a meaningful opportunity to cross-examine Officer Griggs, observing that there had been "no impediment to [Mr. Barrera] asking the type of questions that he would elect to ask if the agent were to be physically present." *See* R. at 31. "To prevail on a due process claim, an alien must establish not only error, but prejudice." *Alzainati v. Holder*, 568 F.3d 844, 851 (10th Cir. 2009). It was not error for the Immigration Judge to allow telephonic testimony, and Mr. Barrera simply has not persuasively established any prejudice suffered by him as a result of it.

### 4. *Crimes Involving Moral Turpitude*

Because Mr. Barrera failed to satisfy the continuous-presence requirement for eligibility for cancellation of removal, we do not reach the BIA's determination that Mr. Barrera was also ineligible for cancellation because his 1993 California conviction was for a crime involving moral turpitude.

### III. CONCLUSION

For the foregoing reasons, the petition for review is DISMISSED IN PART for lack of jurisdiction, and DENIED IN PART, as stated in the INTRODUCTORY

-19-

STATEMENT. Mr. Barrera's motion for leave to proceed *in forma pauperis* is GRANTED.