FILED
United States Court of Appeals
Tenth Circuit

May 22, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

IRINA RUVINOVNA KLEYNBURG,
a/k/a Irena R. Davis, a/k/a Irina R. Davis,
a/k/a Irena Romnovna Davis,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 12-9588
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

Irina Ruvinovna Kleynburg petitions for review of a decision by the Board of

Immigration Appeals (BIA) affirming the Immigration Judge's determination that she

is statutorily ineligible for cancellation of removal. Exercising jurisdiction pursuant

to 8 U.S.C. § 1252, we deny the petition for review.

_____

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I. Background

Petitioner is 53 years old. She entered the United States in November 1992 as a refugee from Moldova. In January 1993 and December 1993, she was arrested for shoplifting. Petitioner pled guilty to the offenses in 1993 and 1994, respectively. In 2002, petitioner filed an application to adjust her status to that of a lawful permanent resident. On the application form, she said she had never been arrested.

At her adjustment interview, the immigration officer confronted her with evidence of her two 1993 arrests. Petitioner said they happened a long time ago, she did not remember much about them, and she thought they were cleared from her record. The officer noted that she had failed to disclose her arrests and determined she appeared to be inadmissible (and therefore not eligible for an adjustment of status) because she had committed a crime involving moral turpitude (CIMT) and had misrepresented material facts during her application process. He told her she would need to file for a waiver of these grounds of inadmissibility and directed her to "submit certified copies of any and all arrests and/or convictions." Admin. R. at 731.

Petitioner then filed an application for a waiver, but she did not include copies of any arrests or convictions, nor did she specifically list the reasons for which she sought the waiver on the form. Attached to the application, however, was a page from her interview with the immigration officer describing the arrests at issue, her explanation for failing to reveal them, and her description of the offenses. On February 19, 2002, her application was approved and her status was adjusted to that

of a lawful permanent resident (LPR).  Because she was a refugee, the adjustment of status dated back to her initial entry into the United States in November 1992.  *See* 8 U.S.C. § 1159(a)(2).

Petitioner subsequently committed a host of shoplifting offenses, and in February 2012, the Department of Homeland Security (DHS) commenced removal proceedings against her based on two of her shoplifting convictions (in 2006 and 2010) and a conviction for attempted acquisition of a controlled substance by prescription alteration.  The Immigration Judge (IJ) found that the government proved the grounds for removal by clear and convincing evidence, which petitioner does not contest.  Petitioner sought discretionary relief in the form of cancellation of removal under 8 U.S.C. § 1229b(a).

To qualify for relief under § 1229b(a), petitioner had to meet three criteria, only one of which is at issue here:  she had to have "resided in the United States continuously for 7 years after having been admitted in any status."  *Id.* § 1229b(a)(2). Because she was granted LPR status retroactive to November 1992, that was the entry date for purposes of calculating the seven years.  The BIA determined, however, that petitioner did not have seven years of continuous residence because of the "stop-time rule" contained in § 1229b(d).

The stop-time rule was enacted as part of the amendments to the Immigration and Nationality Act in 1996 through the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA).  As pertinent here, the stop-time rule provides that any

- 3 -

period of continuous residence will be deemed to have ended "when the alien has committed an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible . . . under section 1182(a)(2) . . . or removable . . . under section 1227(a)(2) or 1227(a)(4)."  8 U.S.C. § 1229b(d)(1).

The BIA determined that petitioner's commission of the two theft offenses[1] in 1993 ended the period of continuous residence under the stop-time rule.  First, it determined that petitioner's 2002 application for a waiver "does not establish that it was granted for her 1993 and 1994 retail theft convictions because these convictions are not specifically listed on the waiver application."  Admin. R. at 4.  Second, the BIA determined that even if the 2002 waiver did cover petitioner's two CIMT convictions, it did not erase those convictions for purposes of the continuous-residence calculation under the stop-time rule in § 1229b(d)(1).  The BIA also rejected petitioner's argument that applying the stop-time rule to her pre-IIRIRA convictions was impermissibly retroactive.

Finally, the BIA denied petitioner's motion for remand in which she argued that the government attorney had made misrepresentations of fact and law to the IJ and the BIA and that the IJ may have participated in ex parte communications with government counsel.  The BIA concluded that petitioner was given a meaningful

---

[1]     Petitioner has not raised any challenge to the agency's conclusion that her 1993 retail thefts were CIMTs that rendered her inadmissible under § 1182(a)(2) and removable under § 1227(a)(2).

opportunity to be heard, that there was no indication the IJ's conduct amounted to a due process violation, and, in any event, that petitioner had not shown any prejudice.

Petitioner now seeks review of the BIA's decision.

II.  Discussion

We first address our jurisdiction.  Although we lack jurisdiction to review discretionary aspects of a BIA decision concerning cancellation of removal, we retain jurisdiction to review non-discretionary determinations such as the one in this case involving § 1229b's continuous-residence requirement.  *See Sabido Valdivia v. Gonzales*, 423 F.3d 1144, 1147-49 (10th Cir. 2005).  The BIA's decision in the instant case was written by one board member and contains the BIA's reasoning.  8 C.F.R. § 1003.1(e)(5).  Under these circumstances, our review is limited to the grounds articulated in the BIA's decision.  *See Barrera-Quintero v. Holder*, 699 F.3d 1239, 1244 (10th Cir. 2012).  We review de novo the constitutional claims and questions of law at issue in this case.  *Id*. at 1243.

Petitioner spends much of her brief arguing that the agency erred in determining that her two CIMT convictions were not waived because they were not specifically listed on her waiver application when she adjusted her status in 2002. We need not address that issue because petitioner must also show that, even if the waiver covered her CIMT convictions, those convictions could not be used to determine whether she met the continuous-residence requirement for cancellation of removal.  As the government explains, petitioner "erroneously conflates the waiver

- 5 -

of *grounds of inadmissibility* she received in 2002 with a waiver of the immigration consequences of the *crimes* underlying the grounds of admissibility." Resp. Br. at 14.

Petitioner argues that government counsel conceded at the hearing before the IJ that if the waiver covered her CIMT convictions, then those convictions probably could not be used for the stop-time rule. But the IJ and BIA both concluded otherwise. She fails to offer a reasoned rebuttal to the BIA's conclusion that, even if the convictions were waived, it would "not erase the convictions for purposes of continuous residence under [§ 1229b(d)(1)], and her commission of the theft offenses in 1993 stopped the accrual of her period of continuous residence." Admin. R. at 4. In reaching this conclusion, the BIA relied on *In re Balderas*, 20 I. & N. Dec. 389 (BIA 1991).

Petitioner argues that the BIA incorrectly cited to *Balderas* because the BIA should not apply the stop-time rule retroactively to her pre-IIRIRA convictions. But retroactive application has nothing to do with the BIA's reliance on *Balderas*. The BIA cited *Balderas* for the proposition that "a waiver of inadmissibility or deportability waives only the ground charged, but not the underlying basis for removability." Admin. R. at 4. Petitioner has not articulated how the BIA erred in relying on the substantive holding in *Balderas* in determining that petitioner's 1993 CIMTs, even if waived as grounds for inadmissibility for adjustment-of-status purposes, could still be used for the purposes of determining whether she met the

continuous-residence requirement for cancellation of removal. We see no basis to disagree with the BIA's determination on this issue.

We next consider petitioner's argument that the BIA erred in applying the stop-time rule retroactively. The BIA held that petitioner's argument was foreclosed by its precedential decisions in *In re Robles-Urrea*, 24 I. & N. Dec. 22, 28 (BIA 2006), and *In re Perez*, 22 I. & N. Dec. 689, 691 (BIA 1999), which rejected the argument that the stop-time rule was impermissibly retroactive if applied to convictions occurring before the effective date of IIRIRA. Petitioner argues, however, that the Supreme Court's recent decision in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), precludes the BIA from applying the stop-time rule to her 1993 and 1994 convictions. We disagree.

The Court in *Vartelas* was not concerned with the stop-time rule, but with another provision of IIRIRA, 8 U.S.C. § 1101(a)(13), that effectively changed the ability of an LPR who had been convicted of a CIMT before IIRIRA's enactment to travel outside the United States without risking placement in removal proceedings as an inadmissible alien upon his return. The Court explained that "[t]he essential inquiry . . . is whether the new provision attaches new legal consequences to events completed before its enactment." *Vartelas*, 132 S. Ct. at 1491 (internal quotation marks omitted). Because the petitioner in *Vartelas* had been able to travel freely before IIRIRA despite his 1994 CIMT conviction but could not do so after IIRIRA

based solely on that conviction, the Court concluded that § 1101(a)(13) could not be applied retroactively under the circumstances.

We see nothing in *Vartelas* that would prohibit applying the stop-time rule to petitioner's two pre-IIRIRA CIMT convictions. Petitioner entered the country in 1992 and committed two CIMTs in 1993. Those offenses made her immediately removable under pre-IIRIRA law. She was not eligible for discretionary relief when she pleaded guilty to those CIMTs and she did not become eligible for such relief before IIRIRA's enactment. Petitioner therefore had no greater right to stay in the country before IIRIRA was enacted than she does now. Considering the essential inquiry in *Vartelas*, applying the stop-time rule to petitioner's 1993 CIMTs to preclude eligibility for cancellation of removal is not impermissibly retroactive because it does not attach a new legal consequence to those convictions. This is also consistent with circuit cases considering the retroactivity of the stop-time rule. *See Martinez v. INS*, 523 F.3d 365, 373-74 (2d Cir. 2008) (explaining that applying stop-time rule did not impermissibly attach "a new disability" to pre-IIRIRA crime because the crime at issue rendered the alien deportable both before and after IIRIRA's enactment); *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1202-03 (9th Cir. 2006) (holding that stop-time rule could not be applied retroactively to pre-IIRIRA crime that did not render alien ineligible for discretionary relief before IIRIRA but did render him so after IIRIRA's reclassification of the crime). Accordingly, we see

- 8 -

no error in the BIA's decision to apply the stop-time rule to petitioner's pre-IIRIRA convictions.

Petitioner further argues that the BIA's application of the stop-time rule conflicts with the refugee roll-back provision in 8 U.S.C. § 1159(a)(2), which grants the benefits of legal permanent residence retroactively to the time of the alien's initial admission as a refugee. Her argument is not a model of clarity but appears to be that refugees must be exempt from application of the stop-time rule or else the retroactive granting of legal permanent residence for refugees would be meaningless. We see no merit to this argument. There is nothing in 8 U.S.C. § 1229b(d)(1) indicating that Congress intended for LPRs who had previously been refugees to be exempt from the stop-time rule if they end up in removal proceedings and are seeking discretionary relief from removal. Moreover, Congress knows how to create such exemptions as it did so for battered spouses and children. *See* 8 U.S.C. § 1229b(b)(2)(B) (exempting aliens who have been battered or subjected to extreme cruelty by a spouse or parent from strict application of the stop-time rule).

Finally, petitioner complains that the BIA erred in denying her motion to remand. She asserts that she "made a *prima facie* case of injurious, willful, deliberate misrepresentation of facts and possibly the law by DHS counsel." Pet'r Br. at 31. But, as the BIA correctly held, petitioner has not identified any prejudice to her from the alleged conduct of DHS counsel; without such prejudice, she cannot prevail on a due process challenge, *see Berrum-Garcia v. Comfort*,

390 F.3d 1158, 1165 (10th Cir. 2004). Petitioner had a full and fair opportunity to be heard before the IJ, and she has not identified or explained how any additional evidence would change the outcome of her case. The BIA correctly determined that petitioner failed to establish a due process claim necessitating a remand.

III. Conclusion

For the foregoing reasons, we deny the petition for review.

Entered for the Court

John C. Porfilio
Senior Circuit Judge