**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RAMESH RANA,

      Petitioner,

v.

ERIC HOLDER, JR., United States
Attorney General,

      Respondent.

No. 12-9568
(Board of Immigration Appeals)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **ANDERSON**, and **BACHARACH**, Circuit Judges.[**]

---

Ramesh Rana is a native and citizen of Nepal who presently resides in

Colorado.  He petitions for our review of a decision by the Board of Immigration

Appeals (BIA) to affirm the denial of his asylum request.  He claims the BIA's

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G).  The cause is therefore ordered submitted without oral argument.

decision lacks substantial evidence. Exercising jurisdiction under 8 U.S.C. § 1252, we DENY his petition.

Rana entered the United States in June 2007 as a non-immigrant visitor with authorization to remain in the country until no later than October 2007. Rana's authorization expired but he stayed illegally. In June 2008, he filed with the Department of Homeland Security (DHS) applications for asylum, withholding of removal, and protection under the United Nations' Convention Against Torture (CAT). As the basis for his applications, Rana alleged he had been kidnaped and beaten by Maoists in his rural village in Nepal because of his support for an opposing political party. But DHS denied all relief and placed Rana in removal proceedings by filing a notice to appear before an immigration judge (IJ). DHS's ground for deporting Rana was that he had stayed in the country longer than permitted, in violation of 8 U.S.C. § 1227(a)(1)(B).

Rana admitted his removability but renewed his requests for relief from deportation through asylum, withholding of removal, and CAT protection. The IJ held a hearing on the merits of Rana's requests, but at the conclusion of the hearing, the IJ denied all relief. Rana then filed a timely appeal to the BIA,

which affirmed the IJ in a two-page decision.[1]  Rana now petitions for our review of the BIA's decision, challenging only the decision to deny him asylum.

Rana claims the BIA lacked substantial evidence to affirm the IJ's denial of asylum for his well-founded fear of future persecution.[2]  "To be eligible for asylum, an alien must establish by the preponderance of the evidence that he or she is a refugee."  *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645–46 (10th Cir. 2012).  "An applicant may obtain refugee status in one of three ways," including, as relevant here, "through a showing of past persecution, which gives rise to a rebuttable presumption of a well-founded fear of future persecution."  *Id.* at 646.

The BIA acknowledged that Rana had suffered past persecution, but it affirmed the IJ's conclusion that DHS had successfully rebutted the well-founded fear presumption.  When reviewing the BIA's assessment of the facts, "we are

---

[1]  The parties dispute whether the BIA used a one- or three-member panel here.  The difference matters for the scope of our review.  *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1202–04 (10th Cir. 2006).  Because the BIA opinion's cover page lists three judges on the panel, [*see* Agency R. 1] we conclude it was a three-member panel.  Consequently, "the BIA opinion completely supercedes the IJ decision for purposes of our review," although, "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds."  *Id.* at 1203–04; *see also* 67 Fed. Reg. 54,878, 54,886 n.6 (Aug. 26, 2002).

[2]  Rana also claims the BIA failed to address whether he should be granted asylum based on his "unwilling[ness]" to return to Nepal because he was persecuted in the past, or based on "a reasonable possibility" that he will suffer other serious harm when he returns to Nepal.  *See* 8 C.F.R. § 1208.13(b)(1)(iii) (West 2013).  But Rana did not raise these specific requests with the BIA, so we cannot review them here.  *See* 8 U.S.C. § 1252 (d)(1).

-3-

bound by Congress's directive that 'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Barrera-Quintero v. Holder*, 699 F.3d 1239, 1244 (10th Cir. 2012) (quoting 8 U.S.C. § 1252(b)(4)(B)); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) ("To reverse [a] BIA finding we must find that the evidence not only *supports* [reversal], but *compels* it . . . ." (emphasis in original)).

The specific finding of fact Rana challenges is the agency's determination that he could safely relocate within Nepal. While the BIA found that Rana had suffered past persecution from the Maoists because of his political activities, the BIA concluded that Rana could still live in Nepal without a reasonable fear of persecution if he relocated to Kathmandu, Nepal's capital. It concluded as much because, before Rana came to the United States, he had spent four months in Kathmandu unharmed, and because "the Maoists are now a functioning political party that is part of the government." Agency R. 3. The BIA also noted that the State Department's 2009 report on Nepal shows that "[Rana's] political party is able to operate in Kathmandu without interference." *Id.*

Rana says the evidence actually compels a conclusion to the contrary. He says he lived in Kathmandu unscathed only because he was in hiding the entire time, and he says the fact that the Maoists are now participating in the government actually *increases* the chance that he will be persecuted, since the Maoists may now have the backing of the state. Moreover, he points out, the

-4-

basis for the BIA's conclusion that his party operates without interference in Kathmandu is a single demonstration at which nearly 200 of his fellow party members were detained by police and several were injured.

But we cannot say "any reasonable adjudicator would be compelled to conclude to the contrary" of the BIA here. First, Rana did not offer any testimony or evidence to support the reasonableness of his belief that he needed to stay in hiding while in Kathmandu, aside from his testimony that some Maoists also lived in Kathmandu during that time. And, in fact, that Rana safely coexisted with Maoists in Kathmandu and did not report hearing of any violence there supports the BIA's conclusion that he could safely relocate to the capital.

Second, Rana's interpretation of the Maoists' integration with the current government, while plausible, does not compel concluding to the contrary of the BIA. Nor has Rana pointed to any evidence to support his interpretation.

Third, the record shows that the demonstration by Rana's political party resulted in 200 arrests because some demonstrators were blocking public buildings, not because the police were trying to silence the demonstrators.

Finally, our review of the 2009 State Department report on Nepal does not compel reversing the BIA's conclusion that "[Rana's] political party is able to operate in Kathmandu without interference." Agency R. 3. The report shows that, while Maoists still caused some violence in other parts of Nepal, there is no indication of pervasive Maoist attacks in Kathmandu—and Rana offers no

evidence of such attacks.  The report also suggests that the various political parties in Nepal have coexisted peacefully, especially within the Kathmandu area, since 2006-2007, when Rana was persecuted in his family's rural village.

In sum, a reasonable adjudicator could conclude that Rana will live without a well-founded fear of future persecution in Nepal if he relocates to the capital city.  Given our standard of review, we cannot disturb the BIA's decision.

For these reasons, we DENY Rana's petition for review.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge