**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 2, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LIVIA JUAREZ-MORALES,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9571
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

After an immigration judge (IJ) denied her application for cancellation of

removal and ordered her removed to Mexico, Livia Juarez-Morales (Ms. Juarez)

appealed to the Board of Immigration Appeals (BIA). The BIA dismissed her appeal

and denied her motions seeking a remand to the IJ. Ms. Juarez petitions for review of

the BIA's order. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the

petition for review.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

I.

A.

Ms. Juarez is a native and citizen of Mexico. She entered the United States on or about August 26, 1997. She is single and has four United States citizen children, born between 1999 and 2012.

On April 12, 2011, the Department of Homeland Security (DHS) served a Notice to Appear (NTA) on Ms. Juarez. The NTA alleged that she had arrived in the United States without being admitted or paroled after inspection. It ordered her to appear before an IJ at a date and time "to be set." R. at 498.

The DHS later served a Notice of Hearing (NOH) on Ms. Juarez requiring her appearance at an IJ hearing scheduled for May 25, 2011. She appeared at the hearing. At later hearings she conceded that she was removable and designated Mexico as the country of removal. She also applied for cancellation of removal.

In March 2017, the IJ held a hearing on Ms. Juarez's amended application for cancellation of removal. She testified at the hearing in support of the application.

Ms. Juarez stated that she is her children's primary provider and caretaker. She has a job and cleans houses on her own to earn money for their care. The children's biological father, Mr. Gonzalez, does not provide financial support and does not take care of the children.

Ms. Juarez testified she has been in the United States since 1997, except for a brief departure in 2004. On December 4, 2004, the border patrol stopped her in Arizona. One of her sons was still breastfeeding, and the agents told her she would

2

be placed in a different cell from her children. To avoid this separation, she agreed to voluntarily return to Mexico. She left, but she testified that she illegally reentered the United States with her children the next afternoon, December 5.

According to Ms. Juarez, her three younger children have no medical issues. But her oldest son, Alexander, has a learning disability. He has received speech and reading therapy, had an Individual Education Plan in school, and has an ongoing problem with poor handwriting. He would like to be a teacher, but Ms. Juarez doubts that goal would be possible for him to achieve.

Ms. Juarez stated all her children would have a difficult time in Mexico because it is "a very violent place" and they are "used to a very comfortable life, an easier life." *Id.* at 228. They would be "very limited" and they likely would not receive "the same type of schooling they are provided for here." *Id.*

B.

The Attorney General may grant cancellation of removal to a noncitizen who is subject to removal from the United States if the noncitizen

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under [8 U.S.C. §§] 1182(a)(2), 1227(a)(2), or 1227(a)(3) . . . ; and

(D) establishes that removal would result in exceptional and extremely unusual hardship to [her] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).

3

Although he found Ms. Juarez's testimony credible, the IJ denied cancellation relief because he concluded she had failed (1) to prove she had been continuously physically present in the United States for the requisite ten-year period, and (2) to establish that her removal would result in exceptional and extremely unusual hardship to her qualifying relatives. He ordered her removed to Mexico but granted her the privilege of voluntary departure in lieu of removal.

Ms. Juarez appealed to the BIA. While her appeal was pending, she filed two motions to remand to the IJ. In her first motion, she argued her case should be remanded for termination under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). She contended that because the NTA failed to include the date and time of the hearing, the immigration court had never acquired jurisdiction and could not have ordered her removed to Mexico. In her second motion, she argued that her attorney had provided ineffective assistance of counsel in connection with voluntary departure and the physical-presence issue.[1]

The BIA upheld the IJ's hardship and physical-presence findings. It denied Ms. Juarez's motion to remand for termination, finding that she did not have a valid *Pereira* argument. It also denied her second motion to remand, reasoning she failed to show that new evidence she presented concerning her physical presence was

---

[1] Ms. Juarez apparently did not receive a copy of the IJ's decision in time to post the required bond for voluntary departure. She attributed this failure to her counsel's ineffectiveness.

4

previously unavailable, and failed to establish an ineffective-assistance claim. The BIA did, however, reinstate the voluntary departure period.

## II.

### A.

Where, as here, a single BIA member affirmed the IJ's decision in a brief order, we review the BIA's opinion, but "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008-09 (10th Cir. 2012) (quotation marks omitted). We review the BIA's legal determinations de novo and its findings of facts for substantial evidence. *See Luevano v. Holder*, 660 F.3d 1207, 1211 (10th Cir. 2011). We review its denial of a motion to remand under the deferential abuse-of-discretion standard. *Neri-Garcia*, 696 F.3d at 1009.

### B.

Ms. Juarez argues the BIA should have granted her motion to remand for termination of proceedings under *Pereira*. In *Pereira*, the Supreme Court held that a putative "notice to appear" that failed to designate the time or place of a noncitizen's removal proceedings was not a "notice to appear under section 1229(a)" of the immigration statutes. *Pereira*, 138 S. Ct. at 2114. Such a notice therefore did not trigger the stop-time rule ending the noncitizen's period of continuous presence in the United States for purposes of an application for cancellation of removal. *See id.* at 2113-14; 8 U.S.C. § 1229b(d)(1). Ms. Juarez contends the NTA served on her,

5

which did not designate the date and time of her hearing, was insufficient to confer jurisdiction on the immigration court. We recently rejected similar *Pereira*-based jurisdictional challenges in published decisions. *See Martinez-Perez v. Barr*, 947 F.3d 1273, 1277-78 (10th Cir. 2020); *Lopez-Munoz v. Barr*, 941 F.3d 1013, 1017-18 (10th Cir. 2019). We therefore reject her jurisdictional argument.

## C.

We next consider the BIA's determination that Ms. Juarez failed to meet the ten-year physical presence requirement for cancellation of removal. Special statutory rules govern this determination. First, "any period of . . . continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear." 8 U.S.C. § 1229b(d)(1). Ms. Juarez concedes the relevant ten-year period ended on April 12, 2011, when the NTA was served on her.[2]

Second, "[a]n alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." *Id.* § 1229b(d)(2). Ms. Juarez concedes she left the United States on December 4, 2004. She testified that she

---

[2] Although her motion to remand included a contention that the deficient NTA did not stop the accrual of her physical presence, Ms. Juarez does not renew that argument on appeal. *See* Pet. Opening Br. at 18-19 ("Ms. Juarez was served an NTA on April 12, 2011, and so she must demonstrate continuous physical presence in the United States *since April 12, 2001*." (emphasis added)). We will not make a *Pereira*-based argument for her that she failed to make to us. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised . . . in an appellant's opening brief.").

returned to the United States the next afternoon.  Although the IJ found her testimony credible, he deemed it insufficient to establish continuous physical presence after her voluntary return to Mexico.  The IJ found Ms. Juarez could reasonably have obtained an affidavit from the father of her children, who was in the United States at the time of her voluntary return, along with affidavits from her former housekeeping clients, that would have corroborated her story about returning after a one-day absence.  Given her failure to produce such evidence, and the lack of other documentary evidence in the record, the IJ concluded she failed to meet her burden of proof.  The BIA affirmed this analysis.

Ms. Juarez argues in conclusory terms that she "clearly met her burden of establishing continuous presence through her credible testimony" and "needed no further corroboration of her clear and concise testimony."  Pet. Opening Br. at 19 (citation and internal quotation marks omitted).  We have rejected similar credibility-based arguments.  *See Gutierrez-Orozco v. Lynch*, 810 F.3d 1243, 1246 (10th Cir. 2016) ("[E]ven credible testimony may not be persuasive or sufficient in light of the record as a whole" to meet the applicant's burden of proof (internal quotation marks omitted)).  The IJ concluded Ms. Juarez provided no documentation that established her presence in the United States during the period immediately following her voluntary return to Mexico.  Her evidence is insufficiently compelling to cause us to conclude "that no reasonable factfinder could find as the BIA did." *Id.* at 1247 (internal quotation marks omitted).

Ms. Juarez cites 8 U.S.C. § 1229b(b)(2)(D), which requires the Attorney General to "consider *any credible evidence* relevant to the application." (emphasis added).[3] But that statute goes on to say that "[t]he determination of what evidence is credible *and the weight to be given that evidence* shall be within the sole *discretion* of the Attorney General." *Id.* (emphasis added). We lack jurisdiction to review the Attorney General's discretionary decision concerning the weight of the evidence. *See id.* § 1252(a)(2)(B)(ii); *see also Perales-Cumpean v. Gonzales*, 429 F.3d 977, 984-85 (10th Cir. 2005) (explaining limited judicial review of discretionary decisions under § 1229b(b)(2)(D)).

Ms. Juarez also argues that because the Attorney General must consider any credible evidence relevant to her application, the IJ could not require her to present specific items of evidence, such as affidavits, to support her claim. *See* Pet. Opening Br. at 18 & n.6. But her reading of the statute is plainly inconsistent with the authority Congress has given the IJ to require corroborating evidence. *See* 8 U.S.C. § 1229a(c)(4)(B) ("Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence."). The IJ's duty to determine whether corroborating evidence exists and can reasonably be obtained

---

[3] The cited language is part of the special rule for battered spouses, *see generally id.* § 1229b(b)(2). To the extent it applies to Ms. Juarez's case, it does not provide a basis for reversal, for the reasons stated.

8

obviously permits him to determine what evidence is required, rather than simply leaving it to the petitioner to "provide credible evidence of [her] own choosing," as Ms. Juarez argues. Pet. Opening Br. at 18.

Ms. Juarez further argues that her voluntary return to Mexico could not have broken her continuous presence because she (1) was not advised of her right to a hearing before an IJ and (2) did not knowingly and voluntarily accept voluntary return. Citing evidence concerning the circumstances of her 2004 departure, the BIA rejected this argument. It concluded the formal, documented process accorded to Ms. Juarez satisfied the requirements for a break in physical presence. *See* R. at 5. In her opening brief Ms. Juarez reiterates her argument to the BIA on this point nearly word for word, without explaining why she believes the BIA erred. In any event, we lack jurisdiction to review the BIA's determination. *See Barrera-Quintero v. Holder*, 699 F.3d 1239, 1246 (10th Cir. 2012) (concluding this court lacked jurisdiction over noncitizen's claim that the BIA erred in finding a break in physical presence due to voluntary return, in spite of his argument that immigration officers "did not adequately inform him of his rights . . . he was not subject to a formal, documented process while detained . . . the relevant paperwork was flawed, the immigration officers were coercive, and he was never told that his return was in lieu of removal proceedings," reasoning that "[t]he BIA's determination on voluntariness . . . implicated . . . [a non-reviewable] exercise of agency discretion").

Finally, Ms. Juarez complains she provided to the BIA the missing corroborative evidence in the form of an affidavit from the father of her children, but

9

the BIA refused to remand to the IJ to review it. In her remand motion she asserted her counsel had been ineffective in failing to obtain evidence to establish her continuous physical presence. The BIA concluded (1) it would not review evidence submitted for the first time on appeal; (2) in view of Ms. Juarez's failure to demonstrate the required hardship, the affidavit was not likely to change the outcome of her case; (3) she had failed to show the new evidence was previously unavailable; (4) she had failed to show that she diligently pursued her ineffective-assistance claim; and (5) she had failed to comply sufficiently with the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1998), for an ineffective-assistance claim.

Ms. Juarez challenges (at most) the first two of these reasons. *See* Pet. Opening Br. at 22-23. Assuming the BIA's refusal to review her evidence to determine whether it justified a remand to the IJ was erroneous, *see Perales-Cumpean*, 429 F.3d at 985-86, she has waived her challenge to other independently adequate reasons the BIA gave for denying her motion*, see Kabba v. Mukasey*, 530 F.3d 1239, 1248 (10th Cir. 2008). We therefore affirm the denial.

D.

Ms. Juarez also presents an extended, multi-faceted argument challenging the BIA's hardship determination, and asserting we have jurisdiction to review that determination. *See* Pet. Opening Br. at 24-50. The government responds that we lack jurisdiction to consider most if not all of Ms. Juarez's argument. We need not address these issues. Even a successful challenge to the BIA's hardship determination would not establish Ms. Juarez's entitlement to cancellation of

10

removal, given that her challenge to the BIA's continuous-presence finding has failed. She has therefore shown no basis for reversal of the BIA's decision.

## III.

The petition for review is denied.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

11